MORITZ HAHN *vs.* THE CONCORDIA SOCIETY OF
BALTIMORE CITY.

*Remedy for violation of Contract—Jurisdiction.*

The defendant agreed with a theatrical company to give them his services as
an actor for a specified time, and agreed not to give his services elsewhere
without their written permission. The agreement contained a stipulation
to the effect that if he should break his engagement, he obligated himself to
pay to the company a conventional fine of $200, to be forfeited by any
violation of the contract; and then provides as follows: "This sum of two
hundred dollars is already forfeited by any violation of the contract, and
requires *no particular legal proceedings* for its execution." On a bill for an
injunction, filed by the company against the defendant to restrain him from
performing at another theatre, it was HELD:

That the complainants having fixed by their own estimate the extent of injury
they would suffer from a non-observance of this condition in the contract,
and having indicated that the only form in which they could seek redress,
and recover the stipulated penalty or forfeiture, was a Court of Law, were
precluded from resorting to a Court of Equity for relief by way of injunc-
tion, on the ground that a violation of this part of the contract would result
in irreparable damage and injury to them.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed by the appellees for an
injunction restraining the appellant from the alleged viola-
tion of a contract by which he was to give them his ser-
vices as an actor. Among others, the contract contained
the two following stipulations.

S. 7. In case Mr. M. Hahn should break this engage-
ment after this contract has been signed, then he obligates
himself to pay to the Concordia Society a conventional fine
of two hundred dollars, the claim of performing his
engagement not precluded. This sum of two hundred

dollars is already forfeited by any violation of the contract and requires no particular legal proceedings for its execution.

S. 12. Without asked for and only after having received the written permission of the theatre committee, Mr. M. Hahn is hereby prohibited to perform or take part in whatever production either with compensation or without, which is not under the auspices of the theatre committee.

Upon the case presented in the bill, the Court below passed an order directing an injunction to issue, and the appeal is taken from that order. The case is further stated in the opinion of the Court.

The cause was submitted on briefs to BARTOL, C. J., BOWIE, STEWART, BRENT, GRASON, MILLER and ROBINSON, J.

*Frederick C. Cook,* for the appellant.

The writ of injunction should not have issued:

1st. Because the contract in behalf of which it issued was such as a Court of Equity would not enforce specifically by reason of its want of certainty and mutuality; because of its being a contract for personal services, which under no circumstances will the Court enforce, either by injunction or otherwise. *Burton, et al. vs. Marshall,* 4 *Gill,* 489; *Kemble vs. Kean,* 6 *Sim.,* 333; *Kimberly vs. Jennings,* 6 *Sim.,* 340; *Hamblin vs. Dinneford,* 2 *Edw. Ch.,* 529; *Sanquirico vs. Benedetti,* 1 *Barb.,* 315; *DePol vs. Sohlke, et al.,* 7 *Rob.,* (*N. Y.,*) 280; *Gelston vs. Frazier, et al.,* 26 *Md.,* 329; *Gervaise vs. Edwards,* 2 *Dru. & W.,* 80; *Hills vs. Croll,* 2 *Phillips,* 60; *Baldwin vs. Society, &c.,* 9 *Sim.,* 393; *Hope vs. Hope,* 22 *Beav.,* 351; *Fechter vs. Montgomery,* 33 *Beav.,* 22; *Mapleson vs. Bentham,* 20 *Weekly Rep.,* 176.

2nd. Because the negative clause sought to be enforced by injunction is in restraint of the exercise of the appellant's profession, and as such is unreasonable, being lim-

ited neither as to space or time, and hence, if at all enforceable, is such as the Court of Chancery will not aid. *Mapleson vs. Bentham*, 20 *Weekly Rep.*, 176; *Mitchell vs. Reynolds*, 1 *P. Wms.*, 181; *Ward vs. Byrne*, 5 *M. & W.*, 555; *Mallan vs. May*, 11 *M. & W.*, 653; *Horner vs. Graves*, 7 *Bingh.*, 735; *Chappel vs. Brockway*, 21 *Wend.*, 157; *Guerand vs. Dandelet*, 32 *Md.*, 561.

*John C. King*, for the appellee.

In this case the contract contains a direct negative stipulation, not to act at any other theatre without the express permission in writing from the complainant; in such case equity will interfere and grant such relief. *Morris vs. Colman*, 18 *Ves.*, 437; *Burton vs. Marshall*, 4 *Gill*, 491; *Webster vs. Dillon*, 3 *Jurist, N. S.*, 432; *Dietrichsen vs. Cabburn*, 2 *Ph.*, 52; *Lumley vs. Wagner*, 5 *De Gex & Sm.* 485, *and* 1 *De G., Mac. & Gor.*, 604.

MILLER, J., delivered the opinion of the Court.

On this appeal from an order granting an injunction we are confined to the case made by the bill. The bill filed by the appellees on the 5th of October, 1874, charges in substance, that they have in their Hall in Baltimore a stage and equipments for the exhibition of theatrical performances, and had at great expense and trouble employed a number of actors to act at their theatre from the 16th of September, 1874, to the 16th of April, 1875, and among others had employed the defendant under a contract in German, a translation of which into English is filed as an exhibit with the bill.

By that agreement (all the terms of which need not be stated,) the complainants engaged the defendant for the term beginning September 16th, 1874, until April 16th, 1875, at a monthly salary of $90, as an actor in all kinds of performances they might deem proper, and he agreed so to act for them. Then there is a stipulation to the effect

that if the defendant should break this engagement after the contract is signed, he obligates himself to pay to the complainants a *conventional fine* of $200, which sum is *forfeited by any violation* of the contract and requires no particular legal proceedings for its execution. There is also, the further stipulation, that without the written permission of the theatre committee of the complainants, the defendant will not perform or take part in any production whatever, which is not under the auspices of that committee.

The bill then charges that in open violation of this agreement the defendant has suffered himself to be announced and published to perform at Turner Hall, another and different theatre in Baltimore, that he has no property out of which a judgment at law could be made, and that his appearance at such other theatre will irreparably injure the complainants in the management of their theatre, which depends entirely upon each actor acting the part or role required of him under the management of their committee. The bill then prays for an injunction prohibiting the defendant from acting, playing, performing, or assisting in acting, playing or performing at the stage or theatre of Turner Hall in Baltimore City, and we assume it was granted in the terms asked for.

This contract differs from that in *Burton vs. Marshall,* 4 *Gill,* 487, in that it contains an express negative stipulation that the defendant would not do that which the injunction prohibited him from doing, whereas, in that case the only agreement on the part of *Mrs. Burke* was to render the services specified in her contract, and the injunction prohibited her from doing acts in relation to which she had made no stipulation. The Court noted the distinction between the case before them, and that of *Morris vs. Colman,* 18 *Ves.,* 437, where a play-writer who had covenanted not to write any dramatic performance for another theatre was, by injunction, restrained from violat-

ing the covenant. They also referred to the then recent case of *Kemble vs. Kean*, 6 *Simons*, 333, where the proprietors of Covent Garden Theatre agreed with an actor that he should act for twenty-four nights during a certain period, at their theatre, and in the meantime should not act at any other place in London, and the Vice-Chancellor held that the Court could not enforce the positive part of the contract, and would not therefore restrain by injunction a breach of the negative part. Our predecessors seem however to have rested their judgment against the injunction in *Burton vs. Marshall*, upon entirely different grounds, and we find in their opinion no definite conclusion as to which of these apparently conflicting English authorities they would have adopted if the necessities of the case before them had required a decision of that question. But since that time the question has arisen in several cases in the English Courts, and in *Lumley vs. Wagner*, 1 *De G., Mac. & G.*, 604, there is a very able and masterly review of all the decisions upon the subject by the Chancellor Lord St. Leonards. In that case a cantatrice had contracted to sing during a certain period of time at the complainant's theatre, and that she would not sing elsewhere without his written authority. An injunction was asked to restrain her from singing for a third party in violation of this contract, and the Court held it would interfere to prevent the violation of the negative stipulation, although it could not enforce specific performance of the entire contract. The Lord Chancellor expressly overrules the cases of *Kemble vs. Kean* and *Kimberley vs. Jennings*, and in a very vigorous opinion sustains the jurisdiction of his Court to grant injunctions in such cases, wholly irrespective of its jurisdiction to enforce specific execution of contracts. "Wherever," says he, "this Court has not proper jurisdiction to enforce specific performance, it operates to bind men's consciences, as far as they can be bound, to a true and literal performance of their agreements; and it will not suf-

fer them to depart from their contracts at their pleasure, leaving the party with whom they have contracted to the mere chance of any damages which a jury may give. The exercise of this jurisdiction has, I believe, had a wholesome tendency towards the maintenance of that good faith which exists in this country to a much greater degree, perhaps, than in any other; and although the jurisdiction is not to be extended, yet a Judge would desert his duty who did not act up to what his predecessors have handed down as the rule for his guidance in the administration of such an equity." By this decision we understand the law to be now settled in England, that though a Court of Equity cannot enforce the specific performance of a contract for the rendition of mere personal services, yet it will not hesitate to interfere by injunction to prevent the violation of a negative stipulation, where the terms and nature of the contract are similar to those in that case. In this country, the authorities, and especially those in New York, of *Hamblin vs. Dinneford*, 2 *Edw. Ch. Rep.*, 529, and *Sanquirico vs. Benedetti*, 1 *Barb.*, 315, appear to have followed *Kemble vs. Kean* and have denied the relief. In fact we have not been referred to, nor have we found, any American decision in which an injunction has in a like case been sustained.

But in our judgment the present case does not require us to decide this important jurisdictional question. In this there is a clause not found in any of the contracts in any of the cases referred to, which, in our opinion, clearly prevents jurisdiction in equity from attaching. The complainants have here exacted, and the defendant has given, a stipulation, to pay a *specific sum* as *liquidated damages* for *any violation* of the contract, including as well a breach of the negative, as the non-performance of the positive and affirmative parts of it. The parties themselves have therefore settled the question and amount of damages resulting from a breach of this negative stipulation in the contract, and the complainants are not left "to the mere chance

of any damages which a jury may choose to give.'' Having thus by their own contract, made presumably with full knowledge of the means and ability of the defendant, and having fixed by their own estimate the extent of injury they would suffer from a non-observance of this condition, and having indicated as clearly as if so stated in terms, that the only form in which they could seek redress and recover the stipulated penalty or forfeiture, was a Court of law, the complainants are precluded from now resorting to a Court of equity for relief by way of injunction, on the ground that a violation of this part of the contract would result in irreparable damage and injury to them. For this reason we are of opinion the order granting the injunction should be reversed and the bill dismissed.

*Order reversed, and*
*bill dismissed.*

(Decided 3rd June, 1875.)