# Foll's Appeal.

1. For reasons of public policy equity will not decree specific performance of a contract to sell certain shares of stock of a bank where such shares are sought for to control the bank.

2. F. in writing agreed to sell and G. to purchase fifteen shares of the stock of a national bank. G. and his friends owned sufficient stock to give them, with these fifteen shares, the control of the bank. The avowed object of the proposed purchase of the fifteen shares was to obtain control of the bank. F. refused to deliver the stock, when G. filed a bill in equity to compel its delivery. *Held,* that for reasons of public policy equity will not enforce such a contract by decree for specific performance.

3. McGowin *v.* Remington, 2 Jones 61, distinguished.

October 23d 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Appeal from the Court of Common Pleas of *Erie county:* Of October and November Term 1879, No. 273. In Equity.

[Foll's Appeal.]

Bill in equity filed by R. M. Greer against John W. Foll, to compel the specific performance of a contract for the sale and delivery of fifteen shares of stock in the First National Bank of North East, Pennsylvania.

The material facts are stated in the opinion of this court.

*C. B. Curtis* and *John P. Vincent*, for appellant.—The general rule is that equity will not enforce the specific execution of a contract relating to personal chattels : 3 Pars. on Cont. 364.

Neither the counsel for the complainant nor the Court of Common Pleas have been able to refer to any Pennsylvania case in which specific performance of a contract for the sale of stock has been enforced. The case of McGowin *v.* Remington, 2 Jones 56, relied upon by the court and by the master to sustain such a decree, was a clear and almost undisputed case of a trust.

Brown *v.* Brown, 2 Casey 77, decides that an act on contract which creates an interest adverse to the interest of the *cestui que trust* is against public policy.

To give control of this bank to the plaintiff and his friends who seek to obtain control with borrowed capital, would be to endanger the interests of the stockholders and encourage speculation. Every contract is illegal which contravenes public policy, and if there be a probability that it will contravene public policy, the equity powers of our courts certainly cannot be invoked to aid its specific enforcement. If this contract is a legal one, the plaintiff has an adequate remedy at law.

*Davenport & Griffith* and *Benson & Brainerd*, for appellee. —A court of equity will decree the specific performance of a contract to transfer railway shares upon the ground that railway shares are not always obtainable in the market : 1 Redf. on Law of Railways 132; Fry on Specific Performance of Contracts 53 ; 1 Story's Equity 690 ; Duncuft *v.* Albrecht, 12 Simons 189.

A specific performance will be decreed " when the party wants the thing in specie and cannot be otherwise compensated; that is, when an award of damages would not put him in a situation as beneficial as if the agreement were specifically performed; or where the compensation in damages would fall short of the redress to which he is entitled:" Phillips *v.* Berger, 2 Barbour 610 ; Stuyvesant *v.* The Mayor et al., 11 Paige Ch. 415 ; 1 Story's Equity 680 ; Pomeroy on Specific Performance 9 ; Weir *v.* Mendell, 3 Brewster 594; Bank of Kentucky *v.* Schuylkill Bank, 1 Parsons Equity Cases 220 ; Sank *v.* The Union Steamship Co. et al., 5 Phila. 499 ; Todd *v.* Taft, 7 Allen 371.

In McGowin *v.* Remington, 2 Jones 56, this court recognised and established the broad principle that a court of equity will decree specific performance of a contract when the law affords no

[Foll's Appeal.]

practical or adequate remedy for its violation. No argument can limit the scope of the opinion in that case to a simple case of trust. The appellant cannot shield himself under the cloak of public policy. He must answer the terms of his contract specifically.

Mr. Justice PAXSON delivered the opinion of the court, November 17th 1879.

This case presents some extraordinary features. We have nothing like it in this state since equity powers were conferred upon the courts. It was a bill to compel specific performance of a contract for the sale and delivery of fifteen shares of the stock of The First National Bank of North East, under the following circumstances: The bank in question is situated at North East, Erie county, Pennsylvania, and has a capital of $50,000, divided into five hundred shares of $100 each. R. M. Greer, complainant below, and appellee, is a merchant in North East, and at the commencement of the year 1877, owned ten shares of the stock of the bank in question. His mother owned sixty-five shares and his brother owned forty. About that time, R. M. Greer conceived the idea of getting enough of the capital of the bank to control it, and to carry out this plan, made an arrangement with his uncle, E. C. Custard, and E. E. Chambers, an operator in oil, to raise sufficient money to buy a controlling interest. They succeeded in buying a considerable amount of the stock, mostly upon borrowed capital, but still lacked the full shares necessary for control. John W. Foll, the appellant, had the requisite number, and on March 7th 1877, Greer and Foll entered into the following contract: "I hereby agree to purchase fifteen shares of The First National Bank of North East, from John W. Foll. The price to be paid is to be $2110.55, and interest from July 20th, at ten per cent.; said stock to be delivered before the second Tuesday of January 1878." This contract was in writing and signed by the parties. Before the time arrived for delivering the stock, Foll informed Greer that he would not deliver it. Foll then made a tender of the money specified in the contract. This bill was then filed and referred to a master, who made his report recommending a decree for specific performance. Exceptions were filed to the report by Foll, which, after a hearing, were dismissed by the court below, the master's report was confirmed, and a decree entered commanding Foll to transfer to Greer the shares of stock referred to. From this decree Foll entered an appeal to this court.

The avowed object of the purchase of the stock and the filing of this bill was to get the control of the bank for Greer and his friends. This appears upon the face of the bill, and is the main ground upon which equitable relief is asked. While the primary object was to obtain the control of the bank, there were, at the same time, secondary objects. As a part of the plan, the said

R. M. Greer was to be made cashier, and Custard and Chambers, before mentioned, were to be directors.

The general rule is, that equity will not enforce specific execution of a contract relating to personal chattels: 3 Parsons on Contracts 364. This is so even in England, where the equity jurisdiction is much broader than in this state. The reason for the rule is, that for the breach of a contract of sale of personal chattels, there is an adequate remedy at law. A jury can be in no doubt as to the proper measure of damages. This is especially true of stocks and public securities which have a known market value. The disappointed purchaser can go into the market and purchase a corresponding number of shares of the same stock.

To this general rule, however, there are exceptions. An article of personal property may have certain qualities not common to other articles of like description, or may have an especial value by reason of its antiquity, family association, or the like. A number of instances are collected in McGowin v. Remington, 2 Jones 61. They are title deeds of an estate and other muniments of property; an antique silver altar-piece: Duke of Somerset v. Cookson, 3 P. Wms. 389; an ancient horn, the symbol of tenure by which an estate is held: Pusey v. Pusey, 1 Ves. 273; heir-looms, 3 Ves. & B. 18, and even a finely-carved cherry stone: Ambler 77.

I know of no instance in this state in which a court of equity has decreed specific performance of a sale of stock. McGowin v. Remington, *supra*, which was cited on behalf of the appellee, is not in point. The specific chattels in that case whose return was sought to be enforced, consisted of a surveyor's maps, plans, and papers of like character. They manifestly came within the exceptions noted, and besides it was a clear case of trust. But we need not pursue this subject further, as the case in hand turns upon a different principle.

While the legal right of the complainant to buy up sufficient of the stock of this bank to control it in the interest of himself and friends may be conceded, it is by no means clear that a court of equity will lend its aid to help him. A national bank is a *quasi* public institution. While it is the property of its stockholders and its profits enure to their benefit, it was nevertheless intended by the law creating it that it should be for the public accommodation. It furnishes a place, supposed to be safe, in which the general public may deposit their moneys, and where they can obtain temporary loans upon giving the proper security. There are three classes of persons to be protected, the depositors, the noteholders, and the stockholders. We have no intimation that the bank, as at present organized, is not prudently and carefully managed. The stock, as now held, is scattered among a variety of people and held in greater or lesser amounts. It is difficult to see how the small stockholders, who have their modest earnings invested in it,

[Foll's Appeal.]

the depositors who use it for the safe-keeping of their moneys, or the business public who look to it for accommodation in the way of loans, are to be benefited by the concentration of a majority of its stock in the hands of one man, or in such way that one man and his friends shall control it. Especially is this so when an attempt is made to control it by the use of borrowed capital. The temptation to use it for personal ends in such case are very strong. It is a fact to which we cannot close our eyes, that the financial wrecks of such institutions with which the pathway of the last few years is so thickly strewn, are the result, in a great measure, of personal management. This purchase has not even the merit of being an investment on the part of the plaintiff. When a man buys and pays for stock with his own money, it may be regarded as an investment. When he buys it upon credit, or pays for it with borrowed money, it is a mere speculation.

Were we to affirm this decree, I see no reason why we may not be called upon to use the extraordinary powers of a court of equity to assist in miscellaneous stock-jobbing operations. A party who is attempting to make a " corner " in stock or in any article of merchandise, who had made his contracts with that end in view, might, with equal propriety, call upon us to decree specific performance thereof. But the decree of a chancellor is the exercise of a sound discretion; it is of grace, not of right, and will never be made where the equity and justice of a case is not clear.

We are in no doubt as to our duty in the premises. We are of opinion that the end sought to be attained by this bill is against public policy, and for that reason we refuse our aid.

The decree is reversed and the bill dismissed at the cost of the appellee.