## C. R. ARMSTRONG *v.* JOHN H. STIFFLER, ET AL.
[No. 73, October Term, 1947.]

*Decided January 21, 1948.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*F. Brooke Whiting, William A. Gunter* and *D. Lindley Sloan* for the appellant.

*Horace P. Whitworth* and *Thomas Lohr Richards* for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is the second case in this court, and at least the third in the lower court, between appellees Llewellyn and England and Queen City Dairy, Inc., or one or more of its stockholders. In *Llewellyn v. Queen City Dairy,* 187 Md. 49, 48 A. 2d 322, we sustained a demurrer to a bill, and dismissed the bill, of Queen City and two of its stockholders against Llewellyn and England to enjoin any transfer of shares covered by options alleged to have been obtained from other stockholders (presumably including the present appellant) by fraud. The bill was dismissed for the reason, among others, that a corporation cannot maintain suit on account of a fraud

practice upon one of its stockholders in purchasing, or obtaining an option on, his shares.

The instant case is a bill by Llewellyn and England and their principal, Stiffler, against a stockholder for specific performance of his option agreement to sell and transfer, "as of February 1, 1946", all his stock (ten shares) for $300 per share. The option agreement, signed by appellant, provides: "In case of default I promise to pay $300 per share * * * as liquidated damages". From an order overruling a demurrer to the bill defendant appeals. The bill alleges that: Plaintiffs on December 29, 1945, secured the option agreement and on February 1, 1946, tendered $3000 and requested transfer and delivery of the stock, which defendant refused; about the same time plaintiffs secured identical option agreements from the holders of more than a majority of the 376 shares outstanding; the "sole plan and purpose" of plaintiffs was to purchase "a majority or controlling interest" so that Stiffler and his associates could "improve" the corporation and "operate it more efficiently"; ten optionors have sold and transferred their stock (109 shares) to Stiffler for $32,700; all the other optionors, including defendant, have refused to sell their stock optioned to plaintiffs; it is impossible for plaintiffs to buy other stock, not optioned; "under the circumstances" defendant's stock "has a peculiar unique value" to Stiffler and the option agreement with defendant "was made for the specific purpose of helping" him "to acquire a majority interest" in the corporation; acting in reliance upon performance by defendant, Stiffler "has expended large sums * * * as aforesaid", and "if his plans in regard to the purchase of a majority of stock * * * are thwarted and defeated" by defendant's breach of his contract, "will suffer irreparable loss * * * and it will be impossible to calculate accurately the amount of damages" he would suffer because of defendant's breach of contract.

Defendant contends that a contract to acquire control of a *quasi*-public corporation is not specifically enforce-

able, citing *Ryan v. McLane*, 91 Md. 175, 46 A. 340, 343, 50 L. R. A. 501, 80 Am. St. Rep. 438. In that case the late Thomas F. Ryan sought specific performance of an alleged contract by a "pool" to sell him just enough stock of the Seaboard and Roanoke Railroad Company to give him (together with stock already owned by him) control of nine allied Seaboard Companies. The pool refused to sell unless Ryan also bought other stock which had been put in the pool after the alleged contract was made. This court said such a course was "demanded by the plainest dictates of ordinary fair dealing. In short, the course which the plaintiff is here contending the defendants are bound to pursue would have resulted in selling their own stock, and at the same time in selling out the minority stockholders". The court said the plaintiff's position in this respect "may be legal, but it is certainly far from equitable", 91 Md. at pages 185, 186, 46 A. at page 343, 50 L. R. A. 501, 80 Am. St. Rep. 438; *cf. Clowes v. Miller*, 74 Conn. 287, 50 A. 728. The decision was that the contract, properly construed, was not a contract to sell, but an unaccepted option, and included not only stock already in the pool but also stock later put in the pool. The court suggested doubt whether a contract to purchase stock control of a *quasi*-public corporation was specifically enforceable, quoting *Foll's Appeal*, 91 Pa. 434, 436, 36 Am. Rep. 671, but nevertheless said, "we do not wish to be understood as saying that never, under any circumstances, will a court of equity enforce a contract for the purchase of a controlling interest in a corporation". 91 Md. at page 185, 46 A. at page 343, 50 L. R. A. 501, 80 Am. St. Rep. 438. This caveat is pertinent in the instant case. Passing the question how Queen City could be considered a *"quasi*-public" corporation, we find on the face of the bill and the option agreements no such unfairness as would prevent specific performance. Plaintiffs are not trying to "sell out" any minority stockholders; it is impossible for them to buy other stock, not optioned. Evidently there is a contest between plaintiffs to acquire control

and the present management to retain it. On demurrer we cannot say the corporation is not susceptible of "improvement" or of "more efficient operation". If there is any unfairness or other facts which would constitute a defense to specific performance any such defenses may be set up by answer. Since the *Ryan* case contracts to purchase stock control of a railroad company or other corporation have been held specifically enforceable in Pennsylvania and in other jurisdictions. *Northern Cent. Ry. v. Walworth*, 193 Pa. 207, 214, 44 A. 253, 74 Am. St. Rep. 683; *Sherman v. Herr*, 220 Pa. 420, 423, 69 A. 899; *Rosenthal's Estate,* 335 Pa. 49, 6 A. 2d 585; see also other cases in Notes in 22 A. L. R. 1032, 1050-1052 and 130 A. L. R. 920, 928-929.

Defendant also contends that the provision in the option agreement for liquidated damages bars specific performance, citing *Hahn v. Concordia Society,* 42 Md. 460. That case was a suit for specific performance (by injunction) of a negative provision in a contract of employment of an actor, under the then comparatively recent doctrine of *Lumley v. Wagner,* 1 De G., M. & G. 604. The contract provided that if the actor should break his engagement after the contract was signed, "he obligates himself to pay to the complainants a *conventional fine* of $200, which sum is *forfeited by any violation* of the contract and requires no particular legal proceedings for its execution." (Italics in opinion.) 42 Md. at page 463. In the light of subsequent decisions it is clear that Hahn was not so exceptional a performer as the opera singers, baseball players and others to whom the doctrine of *Lumley v. Wagner* has been restricted. The court, however, did not decide this question but held that the liquidated damage clause covered any violation of the contract and the employers by their own contract thus indicated that they could seek redress only in a court of law and were precluded from resort to equity. The *Hahn* case has never been extended, but in *Rogers v. Dorrance,* 140 Md. 419, 427, 428, 117 A. 564, 32 A. L. R. 573, was distinguished by stressing the "conventional fine"

and by stating the decision substantially as we have just stated it. The *Rodgers* case holds that provision, in a contract of sale of land, for forfeiture of part payments does not preclude the vendor from specific performance, following *Stewart v. Griffith,* 217 U. S. 323, 30 S. Ct. 528, 54 L. Ed. 782, 18 Ann. Cas. 639, and *Western Union Tel. Co. v. Brown,* 253 U. S. 101, 40 S. Ct. 460, 64 L. Ed. 803. It has generally been held that specific performance should be denied because of a liquidated damage clause only when the contract shows that the clause was intended to give an option to perform or pay damages. *Brown v. Norcross,* 59 N. J. Eq. 427, 430, 431, 45 A. 605; *Rittenhouse v. Swiecicke,* 94 N. J. Eq. 36, 38-40, 118 A. 261; *Phoenix Ins. C. v. Continental Ins. Co.,* 87 N. Y. 400, 405, 406. Normally contracts are made to be performed, not to give an option to perform or pay damages. *Linz v. Schuck,* 106 Md. 220, 67 A. 286, 11 L. R. A., N. S., 789, 124 Am. St. Rep. 481. Forfeiture and damage clauses are means to insure performance, not optional alternatives for performance. See also Restatement, Contracts, sec. 378, comment a. There is nothing in these option agreements which indicates that the liquidated damage clause gives a license to break the contract and pay damages.

It is not necessary to consider the effect of the Act of 1888, ch. 263, Art. 16, sec. 255, on the rights to specific performance in the absence of a showing of financial responsibility of defendant. *Baltimore Process Co. v. My-Coca Co.,* 144 Md. 439, 125 A. 179.

*Order affirmed with costs.*