BUDGET RENT A CAR OF WASHINGTON,
INC. *v.* RAAB

[No. 227, September Term, 1972.]

*Decided March 29, 1973.*

The cause was argued before MURPHY, C. J., and
BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and
LEVINE, JJ.

*Lawrence Sperling*, with whom were *John G. Drake* and *Leonard R. Snyder* on the brief, for appellant.

*Sheldon P. Schuman*, with whom were *Koepenick, Patterson & Schuman* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

The appellant, Budget Rent A Car of Washington, Inc., filed its bill of complaint in the Circuit Court for Montgomery County against the appellee, Hans Raab, seeking to enjoin him from renting automobiles in Bethesda, Maryland in alleged violation of a provision contained in a sub-franchise license agreement. In addition to the injunction, Budget sought monetary damages. The bill alleged that Raab, who formerly operated a Budget Rent A Car franchise under the agreement, was in violation of a non-competition clause contained in that instrument which required him "to refrain from engaging in any other vehicle, automobile, or truck rental or leasing business of motor vehicles in the city of Bethesda,[1] Maryland, during the term of this agreement or any renewal thereof, or for two (2) years after its termination or cancellation, without the express written authorization of BUDGET." Following a hearing, Judge James H. Pugh denied the requested injunction and dismissed the complaint. From that order this appeal was noted.

The facts disclose that the appellee is the sole proprietor of Raab's Service Center, a BP gas station located at 7535 Old Georgetown Road, Bethesda, Maryland. On July 21, 1967, Raab entered into a sub-franchise license agreement with the appellant whereby he agreed to rent a fleet of vehicles from Budget for a period of one year. These were in turn leased to the general public from his service station. Though at times there was friction between the parties and apparent deviations from the

---

1. This is an erroneous description of Bethesda as it is not an incorporated municipality. But, it is a well known area of Montgomery County, Maryland.

agreement, for the four succeeding years Raab annually renewed his contract with the appellant. During this period, a separate telephone listed in the directory under Budget's name, as its Bethesda office, was maintained at the gas station.

On March 8, 1972, Raab, who was then 71 years old, notified Budget, by letter, that because of his failing eyesight and generally poor health he could no longer continue operating under the franchise agreement and would, therefore, terminate it within thirty days. Budget waived a 90 day notice provision contained in the agreement and, as of April 1, 1972, the arrangement was ended by mutual consent.

As of that date, Raab ceased renting automobiles and returned all of the vehicles leased from Budget. However, appellee continued to operate his gas station and to rent Ryder trucks, a business he had started with Budget's consent before the termination of their contract. Shortly after Raab concluded his arrangement with Budget, his wife, Charlotte C. Raab, began what she claimed to be her own automobile leasing business. Mrs. Raab conducted her business from her husband's gas station with a fleet of about 50 Volkswagens and a few Chevrolet vans and cars. These same vehicles, as well as 45 cars rented from Budget, had been used by Mr. Raab when he was in the car rental business. However, the vehicles not leased from Budget were not owned by Mr. Raab. Rather, they were all titled in Mrs. Raab's name and had been purchased by her because her husband could not obtain financing on account of his advanced age and poor health. Mrs. Raab, although she did not pay a rental for the space provided her, maintained separate books from those of her husband and obtained a phone separate from that of the service center. When Mrs. Raab began her business, Budget had the phone listed in its name removed and connected to its Silver Spring office so that all incoming calls were directly transferred there. Although now Mr. Raab, through a manager, continues to operate his service center, occasionally visits the gas station him-

self and may sometimes offer advice to his wife, he claims he is not involved in any way in the operation of Mrs. Raab's "BP Auto Rentals." [2]

Because of the operation of this automobile rental business, Budget seeks this injunction. It claims that Raab is impermissibly competing against Budget by the use of his employees and through his wife acting as his "agent or alter ego." Appellant argues that the operation of "BP Auto Rentals", purportedly by Raab's wife, is just a "subterfuge to bypass the contractual provision not to compete for a two year period in the Bethesda area, State of Maryland." Judge Pugh concluded that the evidence before him was "not convincing that [Raab] was engaged in the rental of automobiles and trucks in violation of the agreement" and, therefore, he denied the requested relief and dismissed the complaint. It is contended by Budget on appeal that this determination by the chancellor was not supported by the evidence. Appellant posits that Raab is in violation of the covenant to refrain from competition by conducting this business through his agents. We will assume for purposes of this opinion that the chancellor was clearly in error when he concluded that Mrs. Raab was operating "for and on her own behalf using automobiles and trucks purchased by her" and that, if the agreement is enforceable, by this means Raab is violating it. However, appellant still cannot succeed in having the trial court's order reversed. This is so because, based on an analysis of the Maryland cases dealing with covenants not to compete which is contained in our recent decision of *Becker v. Bailey,* 268 Md. 93, 299 A. 2d 835 (1973), we conclude that under the circumstances here this case falls within the exception which renders a restrictive covenant unenforceable.

In *Becker* a survey of Maryland law was made in order to determine whether, under the facts of that case, the non-competition covenant contained in a contract of em-

2. Mrs. Raab testified that this is the name she gave her business. She stated that if anyone asked her what it stood for, "I would say 'Better Prices' is what I use the BP for."

ployment was enforceable. There we stated the general rule in Maryland is that:

> "if a restrictive covenant in an employment contract is supported by adequate consideration and is ancillary to the employment contract, an employee's agreement not to compete with his employer upon leaving the employment will be upheld 'if the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer and do not impose undue hardship on the employee or disregard the interests of the public.' " *Becker v. Bailey,* 268 Md. at 96.

It is unnecessary here to reiterate all we stated in *Becker;* it will suffice for us to summarize the law. In that case we discussed some of the factors to be considered in determining the enforceability of a covenant not to compete. These were: whether the person sought to be enjoined is an unskilled worker whose services are not unique; whether the covenant is necessary to prevent the solicitation of customers or the use of trade secrets, assigned routes, or private customer lists; whether there is any exploitation of personal contacts between the employee and customer; and, whether enforcement of the clause would impose an undue hardship on the employee or disregard the interests of the public.

While on its face, the covenant here is reasonable as to both time and space, other circumstances present in this case make the restriction unenforceable. Here, Raab is an unskilled worker whose services are not unique; there was no solicitation of customers; nor was there any use of trade secrets, assigned routes, customer lists or development of personal contacts with customers as an integral part of the service rendered. As the facts of this case bring it within the exception noted in *Becker* and the line of cases discussed there, we conclude that the

chancellor properly dismissed the complaint as the covenant was unenforceable.

*Decree affirmed.*
*Costs to be paid by the appellant.*