# MASSACHUSETTS INDEMNITY AND LIFE INSURANCE COMPANY *v.* DRESSER ET AL.

[No. 99 (Adv.), September Term, 1973.]

*Decided June 22, 1973.*

The cause was argued before Murphy, C. J., and McWilliams, Singley, Smith and Digges, JJ.

*Thomas F. Hogan*, with whom were *McCarthy & Wharton* on the brief, for appellant.

*Leonard M. Murphy*, with whom were *Meatyard & Carlin* on the brief, for appellees.

Murphy, C. J., delivered the opinion of the Court.

For the fourth time in as many months, we are asked to pass upon the enforceability of a contractual covenant restricting competition of a former agent or employee. In March, 1972, appellant, Massachusetts Indemnity and Life Insurance Co. (the Company), filed a Bill of Complaint in the Circuit Court for Montgomery County, seeking to enjoin appellees Darrell A. Dresser (Dresser) and Daniel T. Keenan (Keenan), former agents of the Company, from actions alleged to be in violation of non-competition clauses in their employment contracts. An *ex parte* injunction was granted, but at the subsequent hearing, appellees' demurrer was sustained without leave to amend by Judge H. Ralph Miller, and this appeal followed.[1]

The facts are not in dispute. Appellant, a Massachusetts corporation, is now, and has for many years in the past, been actively engaged in the business of insurance, particularly

---

1. An earlier appeal (No. 243, September Term, 1972) filed by the Company in this case was dismissed by us on April 25, 1973 because no written order or decree had been entered by the lower court. Our dismissal was expressly without prejudice to the Company's right to appeal from the order or decree when entered by the lower court. The written decree, thereafter, was filed in the court below and the Company appealed, requesting that the appeal be decided on the basis of the record, briefs and oral arguments previously filed and heard in the dismissed case. A motion to that effect was granted by us, and we advanced the appeal on our docket. We now proceed to determine the merits of the appeal.

life and health insurance, in the area delineated in the contracts in question — Washington, D. C., Montgomery and Prince George's Counties, Maryland, and Fairfax and Arlington Counties, Virginia. Keenan and Dresser entered into identical employment contracts as "career agents" with the Company, on January 1 and June 1, 1970, respectively; each thereby agreed to act under the supervision of the Company's "general agent" to procure applications for life and health insurance in the area heretofore specified, their compensation to be paid by commissions (a fixed percentage of the yearly premiums received by the Company on any policy so obtained). The contracts were terminable at the will of either party, by notice in writing; appellees' contracts were so terminated shortly before the inception of this litigation. The parties have agreed that during the time of their employment, the appellees acquired knowledge and information as to the Company's accounts, its clients and its business methods.

The contracts contained two separately numbered clauses concerning post-termination conduct of the parties. Paragraph 17 provided that "terminal commissions" — *i.e.*, commissions on policies sold during the term of the employment contract on which premiums were paid after termination of the contract — would be paid to the agent for not less than three years (longer if the employee had been a career agent for longer than three years). The non-competition clause, which is the subject of this dispute, provided:

"(16)          * * *

"B. The Agent agrees that after the termination of this Contract by either party he will not, without the consent of the Company in writing first obtained, (i) for a period of two years after such termination, within the territory specified. . ., directly or indirectly represent, or be connected with any other agency or health or life insurance company engaged in similar business to the business of the Company; and (ii) rewrite or cause

to be rewritten with any other insurer any policy in force with the Company, whether or not such policy had been effected by the Agent. *In the event of any breach of this Paragraph B, the Company may declare that no further commissions shall accrue or be paid under this Contract.* (Emphasis added.)

The Company alleged in its Bill of Complaint that Dresser and Keenan had violated the terms of Paragraph 16B; the allegation was supported by the affidavit of Jeffrey E. Barbernell, the Company's regional superintendent for the Mid-Atlantic area, which was appended to the Bill of Complaint. The affidavit stated that on February 4, 1972, both Keenan and Dresser admitted to Barbernell that they were employed with the Paul Revere Life Insurance Company (doing business, in part, in the Washington Metropolitan area), and were rewriting insurance policies and contracts of the Company.[2] The Company's Bill of Complaint asserted that it did not consent to the violation of the agreement, an allegation supported by copies of letters which it sent to Dresser and Keenan, shortly after termination, calling their attention to Paragraph 16B and specifically withholding its consent to the violation.

The Company took no steps to cut off the terminal commissions being paid to Dresser and Keenan, but instead sought injunctions to compel each of them to comply with their agreement not to compete.

Dresser and Keenan demurred, claiming: (1) that the Company had failed to allege sufficient facts to show an enforceable noncompetition clause; and (2) that forfeiture of the terminal commissions, under Paragraph 16B, was the express and exclusive remedy for the alleged breach. The lower court adopted appellees' second position, stating in its oral opinion:

"If the Agent had had to sign a contract saying that

---

**2.** The affidavit further alleged that Dresser and Keenan "have attempted to and continue to attempt to solicit employees and agents of the plaintiff. That he [affiant] has been informed of the use of confidential records of the plaintiff taken without permission."

he would not do business in his own home town, he may not have done it. This contract only provides that he may lose his commissions if he does it, not that he may be enjoined from doing it, and it is limiting in that it provides an exclusive remedy available to the company. That is the only way it can be construed in the Court's opinion."

Dresser and Keenan continued to claim on appeal by the Company that the "withholding of commissions" clause, Paragraph 16B, is a liquidated damage provision, and that, as such, precludes the issuance of an injunction. They rely upon *Hahn v. Concordia Society of Baltimore City*, 42 Md. 460 (1875). The Company, on the other hand, relies on "the majority rule ... that covenants not to compete will be enforced by injunctive relief even where they contain forfeiture provisions for liquidated sums," citing *Armstrong v. Stiffler*, 189 Md. 630, 56 A. 2d 808 (1948) in support of its view that Maryland would today adopt the majority rule; the Company further argues that an injunction is proper under the standards set forth in *Tuttle v. Riggs-Warfield-Roloson, Inc.*, 251 Md. 45, 246 A. 2d 588 (1968).

We think it apparent that the contract provision in question has none of the earmarks of a liquidated damage clause, defined in Black's Law Dictionary (Rev. Fourth Ed. 1968) as

" ... a specific sum of money ... expressly stipulated by the parties to a ... contract as the amount of damages to be recovered by either party for a breach of the agreement by the other."

Our previous cases have recognized essential elements of a liquidated damage clause which are lacking in the instant case. First, such a clause must provide "in clear and unambiguous terms" for "a certain sum," *Siler v. Marshall*, 251 Md. 342, 346, 247 A. 2d 385, 387-88 (1968); the amount here in question is not capable of calculation until three years after termination of employment as it is contingent upon the continued payment of premiums on policies sold.

Secondly, the liquidated damages must reasonably be compensation for the damages anticipated by the breach, *Goldman v. Connecticut General Life Insurance Co.*, 251 Md. 575, 248 A. 2d 154 (1968), *Hammaker v. Schleigh,* 157 Md. 652, 147 A. 790 (1929); *Mt. Airy Milling Co. v. Runkles,* 118 Md. 371, 84 A. 533 (1912); the amount here in question is the agent commissions which are not reasonably related to the lost profits the Company would suffer by breach of the non-competition clause.[3] Thirdly, liquidated damage clauses are by their nature mandatory binding agreements before the fact which may not be altered to correspond to actual damages determined after the fact, *Siler v. Marshall, supra, John Cowan, Inc. v. Meyer,* 125 Md. 450, 94 A. 18 (1915), *Smithson v. U. S. Telegraph Co.,* 29 Md. 162 (1868); the clause here in question, on the other hand, grants the Company the election to so proceed by use of the generally non-mandatory word "may."

We, therefore, think it evident that that portion of Paragraph 16B which provides for forfeiture of terminal commissions is not a liquidated damage clause but an elective remedy which the Company has chosen not to pursue. "Although the parties may, in their contract, specify a remedy for a breach thereof, that specification does not exclude other legally recognized remedies. A contract will not be construed as taking away a common-law remedy

---

3. In its brief, the Company notes:

". . .the forfeiture of commissions has an inverse relationship to the harms of competition. If the agents, Dresser and Keenan, were successful in persuading all their contacts to cancel their policies with their former employer and then to take out new policies with their new employer, the harm suffered by the company would be great. But since no more premiums would be paid to the company, no commissions could be forfeited and the remedy would be an empty one leaving appellant with an inadequate legal remedy."

Or, as the reasonableness of a liquidated damage clause is determined at the time of contracting, one might formulate another hypothetical extreme showing the non-compensatory nature of the remedy: if an individual remained under contract with the Company just long enough to learn confidential client information, and then terminated the contract prior to any sales, he could then compete to the disadvantage of the Company and Paragraph 16B would provide no relief.

unless that result is imperatively required." 17 Am. Jur. 2d *Contracts* § 445 at 906 (1964); *cf. Armstrong v. Stiffler, supra.* If, as the lower court suggested, Dresser and Keenan signed the contract under the impression that, if willing to forfeit the commissions, they could with impunity breach their promise not to compete, it was due to their misapprehension of the existing law, not to any construction mandated by the wording of the contract. Therefore, the unenforced provision of Paragraph 16B does not, by its mere inclusion in the contract, act to negate the possibility of injunctive relief in a proper case.[4]

The issue of the validity of the non-competition clause was not reached, and, consequently, was not decided by the lower court, and we will not consider it on appeal. Maryland Rule 885. We shall, therefore, remand the case so that the lower court may take appropriate action, including testimony if necessary, to determine if the restriction is reasonable in time and scope, necessary for the protection of the interest of the Company, and not unduly harsh to the employees or detrimental to the interests of the general public. *Tuttle v. Riggs-Warfield-Roloson, Inc., supra.* We recently noted that such "a determination of enforceability should be made based on the scope of each particular covenant itself, and, if that, on its face, is not too broad, the facts and circumstances of each case must be examined." *Millward v. Gerstung International Sport Education, Inc.,* 268 Md. 483, 488, 302 A. 2d 14, 16 (1973).[5] As guidance to the lower court in

---

**4.** We express no opinion on whether the Company could seek both injunctive relief and forfeiture under the contract, as that question is not presented on the record before us.

**5.** In Tuttle, we approved an injunction to enforce an agreement by an agent to refrain, for a two-year period in the area of Baltimore City, "from engaging either directly or indirectly, in any insurance activities with customers of . . . [the former employer]." If Paragraph 16B in the instant case is construed in the conjunctive — *i.e.,* the agent violates the non-competition clause if he does *both* of the acts listed: (i) works for a similar insurance company in the area *and* (ii) rewrites for that insurer policies previously held by the Company — the scope is similar to Tuttle, and the trial judge need only determine the reasonableness of the geographical area. However, the Company has interpreted Paragraph 16B (as indicated in the warning letters sent to Dresser and Keenan referred to above) in the disjunctive — *i.e.,* the agent violates the non-competition clause if he does *either* of the two acts listed — thus creating a restrictive

making this analysis, we cite three of our recent decisions in which Judge Digges for the Court thoroughly reviewed the law on this issue: *Becker v. Bailey*, 268 Md. 93, 299 A. 2d 835 (1973); *Budget Rent a Car of Washington, Inc. v. Raab*, 268 Md. 478, 302 A. 2d 11 (1973); *Millward v. Gerstung International Sport Education, Inc., supra.*

> *Decree vacated; case remanded for trial consistent with the views herein expressed; appellees to pay costs.*

---

covenant much broader in scope than that approved in Tuttle. We think this and other factual questions are more appropriately determined by the trial court.