TUTTLE *v.* RIGGS-WARFIELD-ROLOSON, INC.

[No. 320, September Term, 1967.]

46

*Decided October 8, 1968.*

The cause was argued before HAMMOND, C. J., and MARBURY, McWILLIAMS, FINAN and SMITH, JJ.

*Frank B. Cahn, II,* with whom were *Dorf, Pollack & Cahn* on the brief, for appellant.

Court declined to hear argument for the appellee. *Roger A. Clapp* and *Fenton L. Martin* on the brief for appellee.

MARBURY, J., delivered the opinion of the Court.

On July 20, 1966, the appellee, Riggs-Warfield-Roloson, Inc., filed a bill of complaint in the Circuit Court of Baltimore City to enforce an employer-employee restrictive covenant. After a full hearing, the lower court on July 28, 1967, issued an order enjoining the appellant, Frank C. Tuttle, a former employee of Riggs-Warfield-Roloson, Inc., from engaging in insurance activities with the appellee's customers for a period terminating February 28, 1968, and ordering Tuttle to pay the appellee the sum of $2,139.41, representing commissions paid to him since the termination of his employment with respect to a particular policy. From that order Tuttle appealed.

Riggs-Warfield-Roloson, Inc., a general insurance broker licensed in the State of Maryland, employed Frank C. Tuttle on June 6, 1964, as a salaried producer. His duties were to service accounts already on the books of the appellee, develop new business from these accounts, and to develop new accounts. At the time of his employment there was no written contract, but the parties had agreed that after termination of the employment, Tuttle would refrain from attempting to solicit any of appellee's clients for a period of two years. On September 4, 1964, Mr. Lawrason Riggs, then president of Riggs-Warfield-Roloson, Inc., forwarded a letter to the appellant which contained the standard form of agreement in effect between appellee and about thirty employees. The letter provided in pertinent part:

> "It is further agreed, that in the event of termination of your employment with Riggs-Warfield-Roloson, Inc., you will refrain, for a period of two years beginning with the effective date of such termination, from engaging either directly or indirectly, in any insurance activities with customers of Riggs-Warfield-Roloson, Inc.
>
> "If this letter correctly reflects the understanding

48

which we have reached, will you please sign the form of approval which appears below."

Frank C. Tuttle signed, approving the letter, on September 17, 1964.

On July 23, 1965, Tuttle wrote a salary continuance program policy for J. H. Filbert, Inc., and the appellee received the first commission of $1,225.00 from the policy which was still in effect after termination of the employment of appellant. At the time Tuttle wrote the salary continuance program policy for J. H. Filbert, Inc., that concern already had an existing business relationship with appellee, who had provided them with a post mail policy since 1958 or 1959.

Tuttle voluntarily terminated his employment with the employer on February 26, 1966. Prior to that date, he had discussed with Mr. Riggs certain policies that he felt he was entitled to retain. On February 6, 1966, Mr. Lawrason Riggs, on the appellee's behalf, sent Tuttle a letter of modification which released certain accounts to the appellant, but which retained specifically the J. H. Filbert, Inc., account for the appellee. Tuttle approved and signed this letter on February 11, 1966.

After Tuttle terminated his employment, Frank T. Riggs and John Schiminger, both employees of the appellee, went to the offices of J. H. Filbert, Inc., to advise that company that Tuttle no longer worked for Riggs-Warfield-Roloson, Inc., and that their account would then be handled by Frank T. Riggs. After this visit, on March 31, 1966, Mr. K. J. Baumann, the treasurer of J. H. Filbert, Inc., wrote a letter to the Continental National American Group, the company with whom the salary continuance policy had been placed, stating that Filbert wanted Mr. Tuttle to continue servicing their account. A copy of this letter was sent to Riggs-Warfield-Roloson, Inc. Thereafter, Tuttle was made the broker of record by Continental and was paid commissions on this policy amounting to $2,139.41 as of the time of trial.

After the visit of Mr. Riggs and Mr. Schiminger to J. H. Filbert, Inc., and before the time of the letter designating Mr. Tuttle as the broker of record, the appellant was asked by Mr. Baumann to come to his office concerning a claim that had arisen

on the policy prior to his termination of employment with the appellee. When Mr. Tuttle was asked at the trial whether he discussed with Mr. Baumann his being made broker of record on the Filbert account, he responded "not that I recall."

The lower court found that the restrictive covenant was a valid and subsisting agreement at the time of the wrongs complained of, and that the agreement was reasonable as to time and scope. In response to the appellant's request for a finding of fact on the question of solicitation, the lower court found that there was none, but that such solicitation was unnecessary to constitute a breach of the contract since it clearly provided "you will refrain . . . from engaging either directly or indirectly, in any insurance activities with customers of Riggs-Warfield-Roloson, Inc."

We agree with the lower court that the agreement in question was a valid and enforceable contract. As stated in *Ruhl v. Bartlett Tree Co.,* 245 Md. 118, 123-24, 225 A. 2d 288, 291, quoting in part from *MacIntosh v. Brunswick,* 241 Md. 24, 215 A. 2d 222, the general rule in Maryland is that restrictive covenants in an employment contract, whereby an employee as a part of his agreement undertakes not to compete with his employer upon leaving the employment, will be upheld " 'if the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer and do not impose undue hardship on the employee or disregard the interests of the public.' " See *Silver v. Goldberger,* 231 Md. 1, 188 A. 2d 155.

In *Ruhl, supra,* this Court sustained a covenant in an employment contract beween a company engaged in the business of tree care and one of its area managers. The agreement provided that the employee would not compete with his employer for a period of two years after the termination of his employment within the area of five Eastern Shore counties and a contiguous county in Delaware. The Court indicated a distinction between the cases where business success is attributable to the quality of the product being sold, and those where the personal contact of the employee with the customer is an important factor. In the latter case, the employer has a stronger need for protection against diversion of his business to the for-

mer employee who has had personal contacts with customers which the employer lacks. Accordingly, restrictive covenants to protect the employer's interest are upheld when found to be reasonable as to duration and area. See *Western Md. Dairy v. Chenowith,* 180 Md. 236, 23 A. 2d 660; *Tolman Laundry v. Walker,* 171 Md. 7, 187 A. 836; *Deuerling v. City Baking Co.,* 155 Md. 280, 141 A. 542.

Mr. Lawrason Riggs testified for the appellee that the Filbert salary continuance plan was not unique, and that several other companies offered substantially the same policy. Furthermore, in a memorandum to Mr. Riggs from the appellant, Tuttle unsuccessfully urged the appellee to release the Filbert account from the agreement of September 1964, because "There is now a very close personal tie between the account and Tuttle, and the account has, in the past and recently, indicated how pleased they are with my personalized service on their case." It is manifest that Riggs-Warfield-Roloson, Inc., had a protected employer interest.

The basis for the present action was the alleged violation of a specific covenant not to deal with Filbert covering the salary continuance plan. By the letter of February 6, 1966, from Lawrason Riggs to the appellant, who signed it in approval, the parties modified the original agreement of September 4, 1964, by releasing the accounts of certain customers from the restrictive covenant and by specifically reserving the Filbert account to the appellee. It is impossible for us to accept appellant's argument that a covenant listing both the customer and the policy is ambiguous or unreasonable.

Appellant urges that appellee failed to prove its case because it could not show that Tuttle solicited the account of Filbert. The lower court found as a fact that there was no solicitation, and as a matter of law that solicitation was unnecessary to constitute a breach of the contract. We hold that the lower court was correct. The agreement of September 4, 1964, provided in pertinent part: "that in the event of termination of your employment . . . you will refrain . . . from engaging either *directly or indirectly,* in any insurance activities with customers of Riggs-Warfield-Roloson, Inc." (Emphasis added.) The language of the covenant does not limit Tuttle's obligation to re-

training from soliciting accounts, but prevented him from participating in any type of insurance activity with J. H. Filbert, Inc. It was not disputed that Tuttle was still servicing the Filbert account at the time of the trial, and that he received commissions on that account amounting to $2,139.41 which accrued since the termination of the appellant's employment with the appellee. We find that those facts sufficiently established a breach of the restrictive covenant. We do not consider that the terms of the injunction, now expired, were improper. For the aforegoing reasons, we affirm the order of the lower court awarding damages to the appellee in the amount of $2,139.41.

*Order affirmed, costs to be paid by appellant.*