## BECKER v. BAILEY

[No. 151, September Term, 1972.]

*Decided February 8, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

**94**

*Bill L. Yoho*, with whom were *Robert S. Hoyert, Robert A. Diemer, Roy W. Hooten, Joseph F. McBride, Kenneth A. Lechter, C. Frederick Fiege* and *Hoyert, Diemer, Yoho, Hooten & McBride* on the brief, for appellant.

*Victor L. Crawford*, with whom were *Crawford & Goldberg* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

The appellant, Charles E. Becker, filed his bill of complaint in the Circuit Court for Prince George's County against the appellee, John R. Bailey, seeking to enjoin the appellee from competing against Becker following the termination of his employment. In addition to the injunction, monetary damages were requested. The bill alleged that Bailey, who was once employed by appellant, was in violation of the employer-employee restrictive covenant contained in his employment contract. That contractual provision reads:

> "in the event this agreement is terminated, either voluntarily, involuntarily or by mutual consent, that [Bailey] will not engage in a similar or competitive business for himself or for any competitor or in any capacity for any competitor, in the District of Columbia, Prince George's County, Anne Arundel County, and Montgomery County for a period of two (2) years from the date this Agreement is terminated in any manner."

After a full hearing, Judge James F. Couch issued an order in which he denied the requested relief. From that order, this appeal followed.

The facts disclose that Becker is the sole proprietor of the Becker Title Service which for thirty-four years has provided a tag and title service to automobile dealers located in Washington, D. C. and Anne Arundel,

Prince George's and Montgomery Counties of Maryland. This service consists of visiting various car dealers, picking up their customers' applications for tags and title, taking the papers to the Department of Motor Vehicles for processing, and then delivering the tags and title to the dealers who in turn forward them to their customers. The importance of this service, which takes about four days, is that it is much swifter than mailing and the saving of time is a significant factor since the temporary tags supplied to the purchaser by the dealer have a short life span. In May 1963 Becker hired Bailey to work for him as a tag and title courier. This employment continued uninterruptedly until February 4, 1972 when Becker terminated it, giving as a reason the fact that he had learned that appellee was "moonlighting" with some customers of the Becker Title Service.

Shortly after leaving, Bailey set up his own tag and title company, operating out of his home in Waldorf, Charles County, Maryland. He, at the time of trial, serviced about eighteen dealer accounts—fifteen of these are customers that never used the Becker service, but three are former clients of the appellant. However, there is no evidence that Bailey solicited the business of these former customers of Becker; and, in fact, the testimony indicates just the opposite. One customer had left Becker's service a long time before Bailey was fired and had tried another tag and title company before going to Bailey; the other two were dissatisfied with the length of time it took Becker to perform his service and one contacted Bailey while he was still employed by appellant, but the other did not contact him until after it learned he was no longer with appellant. We note, as did the trial judge, that the information that Bailey had left Becker's was not supplied by appellee; but rather, his employer notified his customers of this fact eight hours before he terminated Bailey's employment. Further testimony adduced at trial shows that appellee is forty-nine years old, in a poor financial condition and is not trained

for any other type of work except possibly, to a limited degree, farming. Faced with this factual background the chancellor concluded that:

> "It seems to the Court, on the evidence before it, that this case falls within the class or type of cases holding that there is no justification for restraint where a former employee does no more than become an efficient competitor of his former employer, and does not do so by exploiting his personal contacts with customers or clients of his former employer.
>
> Further, the Court feels that to find the restriction justified would in fact work an undue hardship on [Bailey].
>
> Accordingly, the Court will deny the injunctive relief prayed.
>
> As far as damages are concerned, this issue is moot in view of the Court's ruling above and secondly they were not proved in fact."

The main issue presented to this Court is whether, under the facts of this case, the non-competition covenant contained in the contract of employment is enforceable against the appellee. We agree with the chancellor that it is not. The general rule in Maryland is that if a restrictive covenant in an employment contract is supported by adequate consideration and is ancillary to the employment contract, an employee's agreement not to compete with his employer upon leaving the employment will be upheld "if the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer and do not impose undue hardship on the employee or disregard the interests of the public." *Ruhl v. Bartlett Tree Co.*, 245 Md. 118, 123-24, 225 A. 2d 288 (1967); *MacIntosh v. Brunswick*, 241 Md. 24, 215 A. 2d 222 (1965). While such restrictions may be enforced under some circumstances, there is no sure mea-

suring device designed to calculate when they are. Rather, a determination must be made based on the scope of each particular covenant itself; and, if that is not too broad on its face, the facts and circumstances of each case must be examined. *Ruhl v. Bartlett Tree Co., supra.* When such an analysis is made, some restrictive covenants are deemed enforceable while others are not. *Compare Tuttle v. Riggs-Warfield-Roloson,* 251 Md. 45, 246 A. 2d 588 (1968) ; *Ruhl v. Bartlett Tree Co., supra; Western Md. Dairy v. Chenowith,* 180 Md. 236, 23 A. 2d 660 (1942) ; *Tolman Laundry v. Walker,* 171 Md. 7, 187 A. 836 (1936) ; and *Deuerling v. City Baking Co.,* 155 Md. 280, 141 A. 542 (1928), *with MacIntosh v. Brunswick, supra; Silver v. Goldberger,* 231 Md. 1, 188 A. 2d 155 (1963) ; and *Tawney v. Mutual System of Md.,* 186 Md. 508, 47 A. 2d 872 (1946).

While the determination of enforceability depends on the facts and circumstances present in each particular case, a comparative examination of the cases in this State which have considered this issue indicates a consistency in the holdings of this Court. These decisions demonstrate that Maryland follows the general rule that restrictive covenants may be applied and enforced only against those employees who provide unique services, or to prevent the future misuse of trade secrets, routes or lists of clients, or solicitation of customers.[1] *Ruhl v. Bartlett Tree Co., supra; Silver v. Goldberger, supra; Tawney v. Mutual System of Md., supra.*

In *Tuttle v. Riggs-Warfield-Roloson, supra,* a restrictive covenant was held enforceable so as to prohibit an employee (Tuttle) from insuring a client that was previously insured by Tuttle's former employer. This holding was based on a distinction noted in *Ruhl*

> "between the cases where business success is attributable to the quality of the product being

---

1. A like analysis of our prior decisions was made by the United States Court of Appeals for the Fourth Circuit in a per curiam opinion. E.L. Conwell and Company v. Gutberlet, 429 F. 2d 527 (4th Cir. 1970).

sold, and those where the personal contact of the employee with the customer is an important factor. In the latter case, the employer has a stronger need for protection against diversion of his business to the former employee who has had personal contacts with customers which the employer lacks. Accordingly, restrictive covenants to protect the employer's interest are upheld when found to be reasonable as to duration and area."

In *Tuttle* this Court found the employer had a protectible interest since the employee had obtained the disputed insurance account because of the personalized service given the insured while employed by Riggs-Warfield-Roloson, Inc. Here, that is not the case. Rather, dissatisfaction with Becker and not personal contact with the employee led to the few defections of customers that occurred. Apparently Bailey's success is "attributable to the quality of the product being sold."

In *Ruhl v. Bartlett Tree Co., supra,* the employee was enjoined from engaging in the tree service business and competing against his former employer for two years in five Eastern Shore counties and a contiguous county in Delaware. That injunction was based on the fact that personal contacts with the customers by the employee were an essential ingredient of his work, that he had been furnished with sales leads and customer lists by the employer and that there had been solicitation in the restricted area. In fact, two-thirds of the work done by the former employee was derived from former customers of Bartlett. The distinction between that case and the one here is obvious.

Similarly, in *Western Md. Dairy v. Chenowith, supra,* there was ample evidence of active solicitation of customers by the employee along his assigned milk route. This justification for enforcing that covenant does not exist here.[2]

---

2. We note that absent an enforceable covenant restricting competition, an employee may make arrangements to compete

Likewise in *Tolman Laundry v. Walker, supra,* this Court reversed the chancellor's decree which refused to issue an injunction. That case involved a laundry and dry cleaning business which dispatched its employees along fixed routes and the success of the business depended upon the loyalty, efficiency and personal contacts with the customers by the company's agents. Thus, the non-competition agreement was enforceable to prevent exploitation by the employee of confidential knowledge of the employer's trade and of the direct and personal contacts established with its patrons. In *Tolman,* the employee had close personal contacts with his customers, knew the extent and scope of business on his route, the needs of each customer, dates of laundry pick up and delivery, price paid for work and good credit risks. And, this knowledge was used to the employee's advantage to lure a substantial number of old contacts away from the former employer to a new one. *See also Gill v. Computer Equip. Corp.,* 266 Md. 170, 292 A. 2d 54 (1972) ; *Griffin v. Guy,* 172 Md. 510, 192 A. 359 (1937) ; and *Deuerling v. City Baking Co., supra,* where a covenant was enforced against a driver-salesman of the company who was assigned to a particular route and was supplied with a list of customers.

Here, Bailey is an unskilled worker whose services are not unique. *See Rosenstein v. Zentz,* 118 Md. 564, 85 A. 675 (1912). Additionally, there were neither assigned routes, nor private customer lists—all the car dealers are listed in the yellow pages of the telephone book. Furthermore, Bailey learned no trade secrets nor did he engage in solicitation of any of Becker's customers. These factors make this case more like *Silver v. Goldberger, supra,* and *Tawney v. Mutual System of Md., supra,* which we conclude are analogous, rather than the cases already discussed.

---

with his former employer before termination of his services, but he may not solicit customers or directly compete while still employed. Ritterpusch v. Lithographic Plate, 208 Md. 592, 602, 119 A. 2d 392 (1956).

In *Tawney* the non-competition clause of a restrictive covenant between a small loan company and its employee was held invalid, although other restraints were permitted. There, this Court held that contract clauses designed to keep secret names and information about customers, and to require the employee to refrain from using any information relative to borrowers gained during his employment as well as not to persuade any such persons "to do anything that might be to the disadvantage of their employers" for a period of three years following termination of employment were enforceable. But, a clause requiring the employee "to refrain from engaging directly or indirectly in any business competitive with that of their employers in the Baltimore City trading area for a period of two years from the date of termination of the employment" was not enforceable. This Court speaking through Judge Henderson reasoned that:

> "It is true that Tawney appears to have acquired a following or clientele, who would doubtless prefer to trade with him personally, regardless of the particular company he worked for. But this would be true in some degree of any salesman, or of any cashier. We think the route cases are distinguishable, for while the route is defined in terms of area, exclusion from that area is only a means of preventing use of the lists of customers.
>
> In the case at bar it is sought to enforce a restriction beyond the time when new employees might reasonably become acquainted with existing customers, and apply it to the whole trading area of Baltimore and environs, wherein there are several hundred thousand people with whom the employer has no contact whatever, and to a business where the occasional financial need of the customer, rather than the recurrent calls of the supplier, is the prime incentive. We think this goes beyond what is necessary to pro-

tect the good will of the employer, and works an undue hardship upon the employees, who would be excluded from engaging in the business for which they are specially fitted by long training and experience." *Tawney v. Mutual System of Md.,* 186 Md. at 520-21.

As in *Tawney,* here, the restriction extends well beyond the few days it would take new employees to become acquainted with existing customers and would prohibit contacting many dealers that Becker never serviced. Additionally, this service is apparently rendered at a time dictated by the volume of sales by the dealers and not on a regular basis. To these factors we can add that most of Bailey's customers never used Becker's service and the very small number that had were not enticed away by Bailey but left because they were dissatisfied with appellant's service.

In *Silver v. Goldberger, supra,* this Court, relying on *Tawney,* recognized the distinction between restraints that are justified and those that are not and emphasized that "there is no justification for restraint where a former employee does no more than become an efficient competitor of his former employer, and does not do so by exploiting his personal contacts with customers or clients of his former employer." After stating that there is a line of cases which holds that restraint may be justified when "a part of the compensated services of the former employee consisted in the creation of the good will of customers and clients which is likely to follow the person of the former employee", Judge Horney for this Court recognized that the facts of a particular case may draw it into "another line of cases." These hold that restraint is not justified "if the harm caused by service to another consists merely in the fact that the former employee becomes a more efficient competitor just as the former employer did through having a competent and efficient employee." Thus, the *Silver* Court affirmed the denial of an injunction sought to enjoin former employees of an em-

ployment agency from operating their own agency. The basis of the decision was that such a restraint was unjustified under *Tawney* and this was particularly true because there was no proof that the former employees had or were likely to take clients away from the employer.

Here, the chancellor specifically found that there was no solicitation by Bailey of his former employer's customers. As we see it, this case falls into the category of the *Tawney—Silver* type of exception where the restrictive covenant is unenforceable. While this covenant, which by its terms does not expire until February 4, 1974, is unenforceable to prevent the kind of competition engaged in here, this decision would not prohibit the seeking of appropriate relief if Bailey started soliciting the customers of the Becker Title Service. In view of our holding as herein expressed, it becomes unnecessary to reach the other contention raised by appellant.

*Decree affirmed. Costs to be paid by appellant.*