## MILLWARD *v.* GERSTUNG INTERNATIONAL SPORT EDUCATION, INC.

[No. 228, September Term, 1972.]

*Decided March 29, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Edward J. Angeletti* for appellant.

*Philip O. Foard,* with whom were *Buckmaster, White, Mindel & Clarke* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from an amended decree entered June 15, 1972 in the Circuit Court for Baltimore County by Judge John E. Raine, Jr. By that decree the appellant, Horace Douglas Millward, was enjoined until September 4, 1973 from engaging in Baltimore County in the operation of any summer camp, physical education or sports instruction for children. And, the injunction specifically referred to a camp operated by Sports Camps, Inc. This case began when the appellee, Gerstung International Sport Education, Inc. filed a bill of complaint seeking to enjoin Millward, who once worked for Gerstung, Inc., from engaging directly or indirectly in any competing business. The requested relief was sought because of an alleged violation of paragraph three of Millward's contract of employment which provided that:

> "[Millward] also agrees that he will not for a period of two (2) years after the termination of this Agreement or any renewal period thereof, directly or indirectly, engage in the same or similar business, namely Gerstung Inter-Sport activities, physical education or sport instructions of any kind in the City of Baltimore or the surrounding counties where programs of the School are conducted, either individually or as

a member of a firm or as a stockholder in a corporation. He further agrees never to solicit, directly or indirectly, divert or take away any of the patronage of the School."

The chancellor, after a full hearing, determined that this restriction was enforceable and Millward was in violation of the non-competition covenant; he, therefore, granted the injunction. This appeal followed.

The evidence adduced at the hearing discloses that Gerstung, Inc., whose founder and president is Siegfried Gerstung, has for the last eight years operated for private elementary school children in the northern Baltimore County area a physical education program in winter and a day camp in summer. Appellee's program, as described by Mr. Gerstung, is the first in Maryland to introduce a European method of movement education. This method is basically an elementary school program. It initially stresses tumbling, gymnastics and swimming, rather than team sports, and emphasizes a child's awareness of his limbs, his body, and what they can do. This is followed by an introduction to the team sports as the child gets older.

Mr. Gerstung first met appellant in the spring of 1968 and because he felt that Millward's unique qualifications would make him an invaluable asset to the corporation, he was employed. Millward was considered ideal for a teaching and camp counselor position because of his past experiences and their publicity value. Appellant was well known in the Baltimore area since he had been much publicized as the coach for the now defunct professional soccer team, the Baltimore Bays, especially in 1967 when he coached his team to the championship of the Eastern Division of the league. Because of this, Gerstung, Inc. issued numerous promotional and press releases to advertise Millward's association with the corporation. In addition to his ability as a soccer player and coach, Millward is a qualified instructor of tennis, cricket, swimming and life saving.

Appellant began work for Gerstung, Inc. in 1968, without a written contract, as a camp counselor in summer and a teacher in winter. On September 4, 1969, he signed a one-year contract and took on additional duties as director of operations of Gerstung, Inc. In this position he was in charge of running the fall Saturday camps; helped teach in the schools; and contacted and negotiated with owners of prospective sites for the location of new summer camps. At the time of signing this employment contract, there was discussion and negotiation between Mr. Gerstung and appellant about the wording of the non-competition clause but Millward finally agreed to a provision which prohibited him from competing against the appellee for a stated period after the termination of his employment. Mr. Gerstung testified that he was so pleased with Millward's performance as an employee that from time to time he increased his duties and responsibilities. On September 4, 1970 a new one-year contract, containing the two-year non-competition covenant in question here, was signed and Millward became director of the summer camps. One year later Millward was re-employed, but without a written contract, to serve as a full time teacher. To enable appellant to supplement his income, Gerstung waived part of the restrictive covenant and Millward was permitted to give private tennis instructions. Additionally, he was given a job with a corporation affiliated with Gerstung, Inc. that sold sporting equipment.

Millward continued in appellee's employ under the oral contract for a few months. Then, on December 18, 1971 he wrote to Mr. Gerstung to inform him of his resignation. However, Millward realized that his immediate departure could cause hardships to Gerstung, Inc. in fulfilling its contractual obligations and so he offered to continue teaching until a replacement could be found. On January 10, 1972, the resignation was accepted but appellant was hired as a substitute or part-time teacher at a salary of $30.00 per teaching day. Finally, in February 1972, relations between Gerstung, Inc. and appellant were completely severed when Millward wrote Mr.

Gerstung to inform him of his affiliation with a competitor, Sports Camps, Inc. With his new employer, Millward was to be director of a new summer camp which was planned to be located in Baltimore County very close to Gerstung's camp. This camp would cater to the same clientele as appellee's and be in direct competition with it. With knowledge that Gerstung, Inc. customarily mailed its advertising brochures in March of each year, Sports Camps, Inc. mailed its out in February 1972. In the brochure, appellant was prominently pictured and advertised as the director of this new camp.

The chancellor found, and there is evidence to support his findings, that the appellant's brochure copied Gerstung's fee schedule and would cause confusion and harm to appellee since:

> "you have a summer camp that draws the same age group of child from the same general location and you locate that camp right near the other camp, that there is a strong showing, there is a great probability, far more than just a reasonable probability, that the competing camp will injure the first camp, particularly that is true when you look at the brochure that the [appellant] uses and compare it with the Gerstung brochure. When you look at a map to show how you get there it looks like you're talking about the same camp."

As a result of this finding, the trial court enjoined Millward until September 4, 1973 from competing in a similar business in Baltimore County; however, the injunction specifically exempted Millward's duties as a tennis instructor as this part of the restriction was waived.

On appeal Millward contends that the chancellor erred when he found this restrictive covenant enforceable. We do not agree. This Court has recently, in the case of *Becker v. Bailey,* 268 Md. 93, 299 A. 2d 835 (1973), analyzed the law of this state relating to the enforceability of non-competition clauses in employment con-

tracts. From that case it is clear that a determination of enforceability should be made based on the scope of each particular covenant itself, and, if that, on its face, is not too broad, the facts and circumstances of each case must be examined. *Becker v. Bailey, supra; Ruhl v. Bartlett Tree Co.,* 245 Md. 118, 225 A. 2d 288 (1967). Some of the factors to be considered in such an examination are whether the restriction is reasonable in area and duration, the hardships its enforcement might impose on the employee, the interests of the public, and whether the employee sought to be enjoined performs unique services, is soliciting customers, using trade secrets, assigned routes, customer lists, or is exploiting personal contacts established between the employee and his customers during his employment. *Becker v. Bailey, supra.* In the case of *Budget Rent A Car v. Raab,* 268 Md. 478, 302 A. 2d 11 (1973), which was argued the same day as this case and the opinion in which is filed together with the one here, we made such an inspection. In *Budget,* where a franchise holder of a car leasing business terminated his agreement and then began to operate a competing car rental operation in violation of a covenant not to compete, we concluded, as we did in *Becker,* that since the person sought to be enjoined was an unskilled worker who performed no unique services and had not solicited customers, used trade secrets, assigned routes or customer lists, or exploited personal contacts, the covenant there was unenforceable. However, we think the facts in this case represent the other side of the coin and are distinguishable from those which controlled the results in *Becker* and *Budget.* Rather, the circumstances here are more like those in *Tuttle v. Riggs-Warfield-Roloson,* 251 Md. 45, 246 A. 2d 588 (1968) and *Ruhl v. Bartlett Tree Co., supra,* cases in which restrictive covenants were held to be enforceable. As we stated in *Becker, supra,* quoting from both *Tuttle* and *Ruhl, supra,* there is a distinction

"between the cases where business success is attributable to the quality of the product being

sold, and *those where the personal contact of the employee with the customer is an important factor.* In the latter case, the employer has a stronger need for protection against diversion of his business to the former employee who has had personal contacts with customers which the employer lacks." (Emphasis added.)

The covenant here not only appears reasonable on its face as to area and duration of restriction, but also no evidence was introduced to show it was unreasonable. Additionally, when the other factors considered in determining enforceability are examined, we detect none that would render the clause unenforceable. An important factor here which dictates our decision is the uniqueness of Millward's reputation and qualifications which had a direct bearing on the services he rendered for the appellee. It was because of this uniqueness he was first hired and his attributes and accomplishments were widely publicized and emphasized by Gerstung, Inc. The importance of Millward's unique qualifications and publicity value are demonstrated by the emphasis Sports Camps, Inc. placed on them in its brochure. An additional factor here is that through his position with Gerstung, Inc., appellant was able to establish personal contacts with students who were potential campers, their parents, and others in the field. He became known in the competitive field of day camp operations and established contacts that were essential if the new camp was to succeed. Finally, although there is no proof of direct solicitation of prior campers of Gerstung, Inc. or use of customer lists, we cannot overlook the effect appellant's affiliation with Sports Camps, Inc. would have on his former students and campers with whom Millward had close personal contact. For these reasons, we conclude that the chancellor correctly found this non-competition covenant enforceable and he did not err when he enjoined Millward from violating it.

*Decree affirmed.*
*Costs to be paid by appellant.*