**HEKIMIAN LABORATORIES, INC., Plaintiff,**

v.

**DOMAIN SYSTEMS, INC., and Commtest, Inc., and John A. Boyer, Sr., Defendants.**

No. 87–8363–Civ.

United States District Court, S.D. Florida.

June 23, 1987.

---

494

William Nussbaum, Hogan & Hartson, Washington, D.C., Michael Pucillo, Alley, Maass, Rogers, Lindsay & Chauncey, Palm Beach, Fla., for plaintiff.

Alan L. Mittman and Richard Lippe, Meltzer, Lippe & Goldstein, New York City, Ira Marcus, Ft. Lauderdale, Fla., for defendants.

### ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

ARONOVITZ, District Judge.

THIS CAUSE is before the Court on the Plaintiff's, Hekimian Labs, Inc. ("HLI") Motion for a Preliminary Injunction to Enjoin Defendant John Boyer, Sr. ("Boyer") from working for Defendant Commtest, Inc. and, more specifically, Commtest's En-

gineering subsidiary Domain Systems, Inc. ("Domain"), in violation of the employment contract entered into between HLI and Boyer. The Court has reviewed the Motion, the supporting and opposing memoranda, heard the testimony of witnesses and evaluated their credibility, and has heard argument of counsel. Accordingly, it is

ORDERED and ADJUDGED that the Plaintiff's Motion for a Preliminary Injunction, the terms of which are hereinafter enumerated, is GRANTED.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. *Factual Background*

HLI and Domain are, as Domain itself concedes, in direct competition with each other throughout the Country and, as testimony indicated, in foreign countries as well. They compete in the field of remote access testing for the telecommunications industry. Remote access testing essentially involves the computerized testing and analysis of telecommunications lines to locate and diagnose areas of data transmission impairment or, in other words, the location of trouble spots in telecommunications lines. Both companies produce and market remote access testing equipment. The field of remote access testing is a very narrow one within the telecommunications industry, and Domain and HLI directly compete for the same small group of customers, who are primarily telecommunications companies. In fact, HLI and Domain share some of the same customers, who give some of their business to HLI and some to Domain.

Defendant Boyer was originally employed by HLI in 1983. Before he accepted employment, and in exchange for his employment, he entered into an employment contract with HLI. The contract contained a restrictive covenant that provided, in pertinent part:

1. That Boyer would not work for any HLI competitor for one year after leaving HLI.
2. That Boyer would not solicit current or prospective HLI customers, nor solicit current HLI employees to leave HLI, for one year after leaving HLI.
3. That Boyer would not disclose HLI trade secrets or other confidential or proprietary information.
4. That Boyer would not disclose confidential customer information for two years after leaving HLI.

Boyer re-executed his employment contract with HLI every year. The latest contract term was to expire July 12, 1987, but Boyer formally informed HLI of his intention to resign and to work for Domain on May 15, 1987. (There was testimony, however, to the effect that Boyer had made his mind up to leave HLI even earlier.)[1]

During Boyer's course of employment with HLI, he was eventually named Director of Systems Engineering. Boyer was the first and the only person to ever hold this position at HLI. As Director of Systems Engineering, Boyer was exposed and made privy to HLI's most sensitive and confidential information. He was directly involved in the design of HLI's remote access testing equipment and was, as the testimony demonstrated, the "father" of HLI's "React" System. The React System is HLI's new and sophisticated remote access testing system, which cost HLI approximately 1.4 million dollars in research and development. According to the testimony of HLI's president, Dr. Robert Ginnings, Boyer supervised and coordinated the development of the software for React, and also integrated the software with HLI's hardware.

Moreover, as Director of Systems Engineering, Boyer was exposed to and intimately familiar with the development and implementation of HLI's long-range planning and product development strategy. Every week while at HLI he was one of the select few that would receive the compa-

---

**1.** Domain concedes that it had knowledge of the restrictive covenant in Boyer's contract before they hired him. They claimed advice of counsel as a justification for ignoring the contract.

ny's highly confidential product development schedule, which contained HLI's long-range goals for product development and market placement of these products. Boyer also had intimate knowledge of the new product initiatives undertaken by HLI.

In addition, Boyer also had direct personal dealings with HLI customers, and became privy to their personal needs and expectations. HLI allows its customers and potential customers to use the remote access testing equipment on a "trial" basis in which the potential customers are given the opportunity to try out the testing equipment before they actually purchase it. Boyer was directly involved with one of these trials for Bell South Services in North Carolina, and became privy to confidential communications in which Bell South Systems advised HLI of ways to tailor its system to meet their specific needs. Domain is currently conducting a similar trial for Bell South Systems.

Boyer also had access to confidential information regarding the strategy that HLI employs while bidding on contracts for testing "small offices", which are offices or buildings containing facilities which ordinarily cannot be tested for impairments. Boyer had direct knowledge of what was actually bid, what the strategy was behind the bids, and what was actually authorized to be bid.

In fact, Boyer was sent to Taiwan on behalf of HLI in February, 1987, to conduct preliminary discussions with the Government of Taiwan in preparation of HLI's formulation of a bid it plans to submit for a contract with that country's government, worth over five million dollars.

As of now, no bids have been formally submitted, and the contract has yet to be awarded. Boyer had direct and personal knowledge of what HLI planned to bid on the contract, what equipment HLI would use to perform the contract, and the specific interests and concerns of the Taiwanese government that were conveyed to HLI. HLI and Domain are currently in direct competition for the Taiwanese contract.

The Court had the opportunity to listen to all the witnesses and judge their credibility, particularly that of Mr. Boyer. On direct examination, Mr. Boyer tried to convey the image to the Court that he was merely a manager in the company, that the only special or unique skills or knowledge he possessed while at HLI were managerial in nature, and that he possessed no confidential or proprietary information regarding HLI that would be of any benefit to Domain. Cross-examination of Mr. Boyer, however, revealed quite a different picture, and many of these revelations are included in the aforementioned Findings of Fact. The Court specifically finds Mr. Boyer's testimony regarding the skills and knowledge he obtained while working at HLI incredulous. While he repeatedly attempted to downplay his importance to HLI throughout his testimony, on cross examination he experienced convenient memory lapses regarding information he was exposed to while at HLI, and was at other times evasive. The testimony of HLI's President, Robert Ginnings, on the other hand, painted what the Court finds to be a more accurate and reliable picture of the extent of Mr. Boyer's knowledge of and exposure to the inner workings of HLI.[2]

### B. Conclusions of Law

■ For the issuance of a preliminary injunction, the plaintiff has the burden of demonstrating that (1) there is a substantial likelihood that it will prevail on the

---

**2.** At the outset of the hearing, the plaintiffs submitted the testimony of Dr. Ginnings in the form of a sworn affidavit. Dr. Ginnings, who was present at the hearing, was sworn in and testified under oath as to the truth of the affidavit and verified complaint. The defendants chose not to cross-examine him at that time, but moved for this Court to deny the Plaintiff's Motion for a Preliminary Injunction. The Court reserved ruling on the matter.

At the close of the defendants' case, the plaintiffs called Dr. Ginnings as a rebuttal witness. After his direct testimony, the defendants were given full opportunity to cross-examine him, and they did so. The Court, as indicated from the bench and in this Order, is satisfied that the plaintiffs have made the requisite showing for the issuance of a preliminary injunction.

merits; (2) irreparable injury will occur unless an injunction is used; (3) the potential harm it faces if relief is not granted outweighs the harm that will occur to the parties against whom the injunction is issued; and, (4) the injunction, if issued, will not disserve the public interest. *Zardui-Quintana v. Richard,* 768 F.2d 1213, 1216 (11th Cir.1985); *Johnson v. United States Dep't. of Agriculture,* 734 F.2d 774, 781 (11th Cir.1984).

### *Discussion*

To satisfy the first prong, namely likelihood of success on the merits, the plaintiffs have the burden of establishing that the restrictive covenant contained in Mr. Boyer's employment contract is enforceable. The contract provides, and both parties agree, that the validity of the contract is to be determined in accordance with Maryland law. In looking to Maryland Law, the Court finds the case of *Becker v. Bailey,* 268 Md. 93, 299 A.2d 835 (Md.1973) to be the definitive statement of the law of Maryland regarding these covenants, and is thus controlling. In *Becker,* the Maryland Court of Appeals undertook a survey of the history of the law of Maryland regarding the enforceability of restrictive covenants in employment contracts. The Court summarized the law as follows:

> The general rule in Maryland is that if a restrictive covenant in an employment contract is supported by adequate consideration and is ancillary to the employment contract, an employee's agreement not to compete with his employer upon leaving the employment will be upheld "if the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer and do not impose undue hardship on the employee or disregard the interests of the public". (Citations omitted) While such restrictions may be enforced under some circumstances, there is no sure measuring device designed to calculate when they are. Rather, a determination must be made based on the scope of each particular covenant itself; and, if that is not too broad on its face, the facts and circumstances of each case must be examined. (Citations omitted) When such an analysis is made, some restrictive covenants are deemed enforceable while others are not.

\* \* \* \* \* \*

> While the determination of enforceability depends on the facts and circumstances present in each particular case, a comparative examination of the cases in this State which have considered this issue indicates a consistency in the holdings of this Court. These decisions demonstrate that Maryland follows the general rule that restrictive covenants may be applied and enforced only against those employees who provide unique services, or to prevent the future misuse of trade secrets, routes or lists of clients, or solicitation of customers.

*Becker,* 299 A.2d at 838.

In sum, the following factors are considered in light of the aforementioned principles:

> (1) whether the employee is a skilled employee whose services are unique;
>
> (2) whether the covenant is necessary to protect the misuse of trade secrets of confidential information or to prevent the unfair solicitation of customers;
>
> (3) whether there is any unfair exploitation of contacts between the employee and the customer; and,
>
> (4) whether enforcement would impose an unfair hardship on the employee or would disregard the public interest.

*Budget Rent A Car of Washington, Inc. v. Raab,* 268 Md. 478, 482, 302 A.2d 11, 13 (Md.1973); *Millward v. Gerstung International Sport Education, Inc.,* 268 Md. 483, 302 A.2d 14, 16 (Md.1973).[3]

■ Under *Becker,* the first question that must be considered is whether the

---

**3.** These factors, as enumerated in *Budget Rent A Car* and *Millward* represent a summary, not a substitute, for the analysis required by *Becker. Budget Rent A Car* and *Millward* were decided within two months of *Becker* and, in fact, all three opinions were authored by the same judge.

restrictive covenant is supported by adequate consideration. This question can be easily answered in the affirmative. The agreement between Boyer and HLI provides that during the non-competition period (one year), Boyer will be compensated each month in the amount of at least ¹⁄₂₄ of his base salary that he earned during his last full calendar year at HLI. These payments will total ¹²⁄₂₄, or ½ of his base salary, so that Mr. Boyer can expect to be paid approximately $34,750 during the non-competition period in exchange for his promise not to compete. This provision for compensation is quite adequate consideration to support the Agreement, and the Court feels it significant to note that its research has revealed no case in Maryland in which the employer had agreed to additionally compensate the employee during the non-competition period.

█ The next level of analysis required by *Becker, supra,* is whether the restrictive convenant contains a restraint that is "confined within limits which are no wider as to area or duration than are reasonably necessary for the protection of the business" of HLI. As far as the duration of the Agreement is concerned (one year), Maryland courts have upheld agreements containing restrictive covenants of greater duration. *See e.g., Millward, supra.* (Physical Education instructor prohibited from engaging in same or similar business of his former employer for two years); *Tuttle v. Riggs-Warfield-Roloson, Inc.,* 251 Md. 45, 246 A.2d 588 (1968) (Insurance agent prohibited from dealing with customers of former employer for two years); *Ruhl v. F.A. Bartlett Tree Expert Co.,* 245 Md. 118, 225 A.2d 288 (1967). *See also Restrictive Covenants in Maryland Employment Agreements: A Guide to Drafting* 11 U.Balt.L. Rev. 377 (1982).

The non-competition clause contained in Mr. Boyer's employment contract is reasonably necessary for the protection of HLI's legitimate business interests. With the extent of knowledge that Boyer possesses regarding HLI trade secrets and other confidential or proprietary information, it will take HLI at least one year to implement the appropriate measures to minimize the impact of Boyer's defection to Domain.

█ In regards to the area covered by the restrictive covenant, the defendants take the position that because the restriction contains no specific geographical limitation, it is therefore unenforceable under Maryland law. The Court disagrees. Maryland law dictates that the limitation on the area covered by the restriction must be one that is *reasonably necessary* for the protection of the employer. *Becker, supra.* Testimony indicated that competition within the business of remote access testing is such that the whole world is its stage. The testimony established that there are only about 20 companies that compete in this business, and they do so on a worldwide basis. Boyer's own testimony indicated that he traveled all over the country and all over the world on HLI business. When questioned by the Court, he testified that he had traveled to Belgium, Mexico, Taiwan, Holland and Canada on HLI business. He additionally testified that he conducted HLI business in the States of Washington, California, Colorado, Illinois, Indiana, North Carolina, New York, Massachusetts, Pennsylvania, New Jersey and Virginia. In fact, he stated he had been to so many States in the Union on HLI business that it was impossible for him to name them all.

The fact of the matter is that Domain and HLI compete on a national and international level. As the evidence demonstrated, Domain and HLI are competing head to head all over the country, and are currently in direct competition for the Taiwan contract. To confine the restrictive covenant to a specified geographical area would render the Agreement meaningless, because if it did contain a geographical restriction, all Domain would have to do is move Boyer to an area outside of this restricted area and the damage to HLI would be the same. Because of the national and international scope of the competition between Domain and HLI, the absence of a specified geographic limitation is reasonably necessary for the protection of HLI.

■ The next avenue of inquiry under Maryland law is whether the restriction imposes an undue hardship on the employee. *Becker, supra,* 299 A.2d at 838. The Court finds that it does not. As previously mentioned, Boyer will be receiving half his salary, or $34,750, for the duration of the non-competition period. To reiterate, this provision for compensation of the employee is unique to any of the restrictive covenants that have been uncovered by the Court's research, and the Court finds this provision to be quite a significant factor for purposes of balancing the interests of Boyer and HLI.

■ The final avenue of inquiry under Maryland law is whether the covenant disregards the interests of the public. There is relatively little discussion in any of the Maryland cases that actually addresses this factor, apart from a few scattered comments indicating that a Court need not concern itself with this aspect if a particular employer is not a monopolist. *See Restrictive Covenants in Maryland Employment Agreements: A Guide to Drafting* 11 U.Balt.L.Rev. at 379–80. Neither party addressed this issue, but the Court cannot, at this time, perceive any danger to the interest of the public.

■ The defendants' position is that the restrictive covenant is not reasonably necessary for the protection of HLI because, they argue, Boyer is not a unique employee and does not possess any information about HLI that would benefit Domain. While conceding that Domain and HLI are direct competitors who compete in the same narrow and specialized field, who manufacture the same type of equipment which performs the same function (albeit somewhat differently), and who compete for the same group of customers, they argue that the only confidential information or trade secret of HLI that Domain could benefit from is the source codes of the software used in the testing equipment. Since Boyer does not have this knowledge, they argue, he has no knowledge of any confidential or proprietary information of HLI that could benefit Domain. The facts, however, as previously indicated, revealed quite a different picture. Boyer had intimate knowledge of HLI's confidential long-range product development schedule. He designed the React System, as well as other HLI equipment and products. He had intimate knowledge of HLI bids and bidding strategies, as well as personal knowledge of HLI customers' particular needs and wishes. He was HLI's first and only Director of Systems Engineering. The defendants' attempt to characterize Boyer as merely a managerial employee with no special or unique skills and no knowledge of HLI trade secrets or confidential information is, quite simply, incredulous.

### Conclusion

In summary, and by way of review, the factors that the Maryland courts employ to determine whether a restrictive covenant is enforceable have, for now, been met. First, Boyer was a skilled employee whose services were unique to HLI. Second, the covenant is necessary to protect the misuse of trade secrets or confidential information and to prevent the unfair solicitation of customers. Third, there exists a danger of unfair exploitation of contracts between Boyer and HLI customers. And, finally, the court perceives no danger to the interest of the public in enforcing the covenant.

Accordingly, at this stage of the proceedings, the plaintiffs have satisfied their burden of demonstrating a substantial likelihood of success on the merits. Additionally, they have demonstrated that irreparable injury will occur if the injunction is not issued, that they face a greater potential harm if the injunction is not issued than the defendants do if it is, and that the issuance of the injunction will not disserve the public interest. Therefore, it is hereby

ORDERED and ADJUDGED as follows:

1. That pending a final hearing by this Court, but in any event, for a period no longer than the applicable time limitations contained in Mr. Boyer's employment contract:

A. Defendant Boyer be, and he hereby is, ENJOINED from working for defendants Domain and Commtest in any capaci-

ty. Defendants Domain and Commtest be, and they hereby are ENJOINED from employing defendant Boyer in any capacity.

B. Defendant Boyer be, and he hereby is, ENJOINED from soliciting plaintiff's customers and prospective customers, as defined in paragraph 4(j) of the Employment Agreement between plaintiff HLI and defendant Boyer ("HLI-Boyer Agreement"), and from soliciting HLI's employees to leave the company.

C. Defendant Boyer be, and he hereby is, ENJOINED from divulging or disclosing any HLI trade secrets of other confidential or proprietary information to anyone, including defendants Domain and Commtest.

D. Defendant Boyer be, and he hereby is, ENJOINED from disclosing HLI's confidential customer information, as defined in paragraph 4(d) of the HLI-Boyer Agreement, to anyone, including defendants Domain and Commtest.

E. Plaintiff shall pay Boyer the payments he is entitled to under the HLI-Boyer Agreement, including any back payments owed since the time he formally left the employment of HLI. Boyer can accept the payments from HLI without prejudice.

2. Discovery in this matter is opened forthwith and shall be completed by Friday, August 14, 1987. From August 14–31, the parties may file any appropriate motions they deem necessary, and any responses in opposition thereto may be filed WITHIN FIFTEEN (15) DAYS THEREAFTER. Any answers to interrogatories shall be filed within FIFTEEN (15) DAYS after the interrogatories are propounded.

3. This matter is set for Trial on the two-week calendar of this Court commencing October 5, 1987.

4. Defendants shall file, no later than 5:00 o'clock p.m. Monday, June 15, 1987, as ordered from the bench, a $100,000 Corporate Surety Bond as security to be conditioned as payment for damages, costs, and for attorney's fees, if any, as may be found due and owing to the defendants as a result of the issuance of the preliminary injunction.