In Medispec, Ltd. v. Chouinard , the covenant in question prevented the employee from working "in an [sic ] capacity whatsoever, directly or indirectly" with a competitor. 133 F.Supp.3d at 772. The court found that the prohibition was facially overbroad because it "prevents Defendant from taking any, job, no matter how unrelated to his prior sales work, with a company that indirectly competes" with the plaintiff and was "not reasonably targeted to achieve the Plaintiff's stated interest in protecting *573 goodwill." Id. at 775. In Seneca One Finance, Inc. v. Bloshuk , albeit a case involving a nationwide restriction, the contract at issue similarly prohibited the employee from "directly or indirectly" working on behalf of the "same or similar" business, 214 F.Supp.3d at 461. The court reasoned that the "provision is not limited to the work that [the defendant] performed ... and is far wider in scope than is reasonably necessary to protect the goodwill" the defendant created on his employer's behalf. Id. at 461-62. Similarly, in MCS Services, Inc. v. Jones , the court reasoned, "the scope of the proscribed activity is not properly bounded ... [because the] covenant demands that Jones shall not directly or indirectly be employed by any other entity, in competition with, or similar in nature to, MCS. It therefore prohibits Jones from working in any capacity with any company that competes or may compete in any way with MCS. This sweeping prohibition is not reasonably necessary to protect the customer goodwill Jones created, and it is not narrowly tailored to that end. It constrains the list of Jones's potential employers instead of targeting possible goodwill-thieving activities." MCS Servs., Inc. , 2010 WL 3895380, at *3 (internal citations omitted). The present covenant similarly proscribes direct or indirect action by the employee and does not cabin its effect to positions where Mr. Rodgers might traffic in customer goodwill.
The Fourth Circuit has ratified this logic. In DPGM II , it deemed facially overbroad a restrictive employment covenant prohibiting "any activity which may affect adversely the interests of" the employer, because, in part, the restrictive covenant was "in no way ... specifically targeted at preventing [the defendants] from trading on the goodwill they created while serving [the plaintiff s] customers." 116 Fed. App'x. at 438. In RLM Communications, Inc. v. Tuschen , a North Carolina case, the Fourth Circuit similarly distinguished between covenants "focus[ed] on employment that raises the risk that [the defendant] will use knowledge obtained" from the plaintiff to its detriment and those that focus on the similarity between the new and former employer. 831 F.3d 190, 197 (4th Cir. 2016).
In light of this precedent, the fact that the plain language of the contract prevents Mr. Rodgers from taking any position with a competitor renders this agreement facially overbroad. Mr. Rodgers's additional arguments pertaining to geographic breadth and breach need not be reached.[3]
In Maryland, a finding of overbreadth-facial or as-applied-does not end the inquiry. "If a restrictive covenant is unnecessarily broad, a court may blue pencil or excise language to reduce the covenant's reach to reasonable limits." DPGM II , 116 Fed App'x. at 439 (citing Tawney v. Mut System of Maryland , 186 Md. 508 (1946)). A court may not, however, "rearrange or supplement the language of *574 the restrictive covenant" to precipitate a properly tailored revision. Id. (citing Fowler v. Printers II, Inc. , 89 Md. App. 448, 465-66, 598 A.2d 794 (1991) ). "A court can only blue pencil a restrictive covenant if the offending provision is neatly severable." Id. "[A] court may not excise the dominant language or words from a covenant that is part of a single indivisible promise." Paul , 2017 WL 2462492, *8 (citing DPGM II , 116 Fed. App'x. at 440 ). Nor can a court "supplement, rearrange, or otherwise rewrite" the language of the restrictive covenant. Id.
The noncompete covenant in this case cannot be salvaged by the blue-pencil doctrine. There is no way to curtail the covenant's scope to specific positions within a competitor organization that raise the risk that Mr. Rodgers will capitalize on the goodwill he generated while at Bindagraphics. DPGM II , 116 Fed App'x. at 439. While the prohibition on direct and indirect competition and the application of the provision to prospective customers, arguably independent grounds to find the contract facially overbroad,[4] might possibly be excised from the covenant's text, section 5(d) of the contract, which delineates the specifics of Mr. Rodgers's promise not to compete, cannot be refashioned to focus on the type of prohibited employment instead of the competitor status of the new employer without adding language and rewriting the covenant. The character and extent of revision required is not permitted under the blue-pencil doctrine. The noncompete covenant remains facially overbroad. And it is therefore unenforceable.
B. Nonsolicitation Covenant
The same rules apply to the nonsolicitation covenant Bindagraphics seeks to enforce. By its terms, the nonsolicitation covenant declares that, for one year following his termination, Mr. Rodgers will not directly or indirectly solicit any customer or prospective customer for products or services the same as, or similar to, those sold by Bindagraphics's trade binding division. The covenant additionally forbids Mr. Rodgers from selling, or being otherwise involved in the sale of, any such product or service to customers or prospective customers during that year. As in the noncompete covenant, customers are limited to those within Mr. Rodgers's sales territory who were either served by Bindagraphics in the year preceding Mr. Rodgers's departure or with whom Mr. Rodgers spoke within one year of them being a Bindagraphics customer. Prospective customers are those solicited by Mr. Rodgers or Bindagraphics in the year preceding Mr. Rodgers's termination. Here too, the question is whether the scope and duration of the prohibition is reasonably necessary to prevent Mr. Rodgers from trading on customer goodwill.
The nonsolicitation clause at issue here is broader in scope than reasonably necessary because it applies to prospective customers and the passive sale or provision of services to a customer that Mr. Rodgers did not solicit. First, the covenant's restriction on solicitation of prospective customers, those within the sales territory solicited by Bindagraphics in the year preceding Mr. Rodgers's departure, is not narrowly drawn to cover only those with whom Mr. Rodgers had contact. Instead, while Mr. Rodgers may have contacted some prospective customers in his capacity with Bindagraphics, the prohibition includes all potential customers solicited by *575 the Bindagraphics trade binding division, drawing a wide prohibition well beyond Mr. Rodgers's personal connections. Courts in this district have found restrictive covenants that attempt to reach prospective customers to be overbroad. See Paul , 2017 WL 2462492, at *6 (explaining "the bar on soliciting [the plaintiff's] prospective customers, which includes those with whom the former employee may have had no personal contact, further renders the non-solicitation provision overbroad.... A prospective customer, under the plain meaning of the term, has not previously done business with [the plaintiff] and thus would not have been the subject of customer goodwill generated by a former ... sales representative.") (internal citations omitted); Seneca One Fin., Inc. , 214 F.Supp.3d at 464 (stating "Seneca One has identified no authority that would support a right to protection of potential customers, and its inclusion of all individuals who have been in contact with Seneca One in its definition of 'Customers' is breathtaking in scope."). Limiting contact with prospective customers is sufficiently untethered from the protected goodwill concern to render this provision overbroad.
Next, the covenant here purports to limit Mr. Rodgers's ability to sell "or otherwise service" any Bindagraphics trade binding division customer. This provision reaches far beyond customers solicited by Mr. Rodgers. It extends to unsolicited bids from customers who initiate contact with Mr. Rodgers, his work on projects solicited or arranged by other employees, and work on behalf of customers who patronize both competitors. As with a restriction barring solicitation of potential customers, the risk this provision seeks to forestall is a risk of greater competition. This is not a protected interest. See DPGM II , 116 Fed App'x. at 438. Instead, as the Maryland Court of Appeals explained in Holloway v. Faw, Casson & Co. , "[p]ersons in business have a protectable interest in preventing an employee from using the contacts established during employment to pirate the employer's customers." 319 Md. 324, 335, 572 A.2d 510 (1990) ; see also Paul , 2017 WL 2462492, at *6 (finding a "restriction on accepting business from [the plaintiff's] customers unreasonable" for this same reason). Because this provision is not reasonably necessary to the employer's protected interest it is facially overbroad.
In contrast to the noncompete provision, it is possible that the facially overbroad components of the nonsolicitation covenant are sufficiently separate (and severable) as to be blue-penciled. But while Bindagraphics asserts that the nonsolicitation clause can be narrowed to conform to Maryland law, see Resp. Defs.' Mots. Dismiss at pp. 10-11, ECF No. 15, it does not put forth a particular proposal for how the provision might be blue-penciled to pertain only to customers with whom Mr. Rodgers interacted. With what is before it, the court prefers not to decide whether the nonsolicitation promise can be narrowed, and if so, whether it is reasonably necessary both facially and as-applied to Bindagraphics's protected interest.[5] Accordingly, *576 Bindagraphics's nonsolicitation claim will be dismissed without prejudice.[6]
ii. Count II: Tortious Interference with A Contract
Under Maryland law, tortious interference with a contract occurs when a third party intentionally interferes with another in his or her business or occupation and induces a breach of an existing contract, of which the defendant was aware, causing damages to the plaintiff. Fowler , 89 Md. App. at 466, 598 A.2d 794 ; Macklin v. Robert Logan Associates , 334 Md. 287, 296-97, 639 A.2d 112 (1994) (collecting cases); see also Blondell v. Littlepage , 413 Md. 96, 125, 991 A.2d 80 (2010). Fox Group, Inc. principally argues that there was no valid contract between Mr. Rodgers and Bindagraphics for the reasons put forth by Mr. Rodgers and considered above. It also contends that Bindagraphics has insufficiently alleged damages.
While an enforceable contract between Mr. Rodgers and Bindagraphics is necessary for the tort claim to survive, it is not sufficient; Bindagraphics must provide a detailed account of the damages it incurred. It is well established law that "expectancy damages for breach of a covenant not to compete [which here includes the nonsolicitation clause] generally are the profits that would have been realized had no breach occurred." Fowler , 89 Md. App. at 473, 598 A.2d 794. "These lost profits must be proved with 'reasonable certainty.' " Id. No such damages are alleged here. Instead, the damages allegation is *577 hypothetical and speculative. See Compl. ¶ 33.
Further, to be viable, a tortious interference with contract cause of action requires Fox Group, Inc. to have known of the nonsolicitation clause at the time of the breach. "[T]he central question is whether, upon learning of the restrictive covenant that binds its new employee, the new employer nevertheless engages the employee to work for him in an activity that would mean violation of the contract not to compete." Fowler , 89 Md. App. at 469, 598 A.2d 794. Here, Bindagraphics has put forth no facts alleging that Fox Group, Inc. knew of the nonsolicitation provision in Mr. Rodgers's contract with Bindagraphics at the time of the alleged breach. This count will be dismissed without prejudice.
iii. Count III: MUTSA claim
A trade secret under the Maryland Uniform Trade Secrets Act ("MUTSA") is "[I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to; and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Md. Code Com. Law § 11-1201(e). The plaintiff bears the burden of "producing some evidence" that the information taken meets the definition of a trade secret. Trandes Corp. v. Guy F. Atkinson Co. , 996 F.2d 655, 661 (4th Cir. 1993) ; see also AirFacts, Inc. v. de Amezaga , 909 F.3d 84, 95 (4th Cir. 2018) (noting that before a court can establish misappropriation, the plaintiff must "demonstrat[e] an item is a trade secret").
In this case, the defendants do not dispute that customer databases may constitute a trade secret under the MUTSA. See also Padco Advisors, Inc. v. Omdahl , 179 F.Supp.2d 600, 609-10 (D. Md. 2002). Rather, the defendants challenge Bindagraphics's trade secret claim on two grounds. First, they say that the complaint fails to plausibly plead a trade secret and that the trade secret revealed in the opposition is an improper attempt to amend the complaint. Reply at pp. 10-12. Second, they contend that Bindagraphics has failed to allege misappropriation. Id.
As it stands, the complaint is not clear enough as to what Bindagraphics trade secret Mr. Rodgers is alleged to have taken with him upon his departure. A plaintiff is not permitted to amend its complaint by supplying new factual allegations in a brief in opposition to a defendant's motion to dismiss. See Adams v. Am. Fed'n of State , 167 F.Supp.3d 730, 736 (D. Md. 2016). The better course of action is to, when permitted, file an amended complaint. This claim will be dismissed without prejudice.
CONCLUSION
For the reasons stated above, Mr. Rodgers's and Fox Group, Inc.'s motions to dismiss will be granted. Bindagraphics's noncompete clause contract claim will be dismissed with prejudice. Its nonsolicitation clause contract claim, confidentiality clause contract claim, tort claim, and MUTSA claim will be dismissed without prejudice.
A separate order follows.

Bindagraphics cites four cases upholding restrictive covenants purportedly prohibiting an employee from working for a competitor in any capacity. They are all readily distinguishable. Intelus Corp. v. Barton , 7 F.Supp.2d 635, 643 (D. Md. 1998), a decision concerning a movant's likelihood of success on the merits for purposes of preliminary injunctive relief, focused on a challenge to a restrictive covenant's unlimited geographic Teach. Hekimian Labs., Inc. v. Domain Sys., Inc. , 664 F.Supp. 493, 499-500 (S.D. Fla. 1987) is a Southern District of Florida case applying Maryland law that considered only the duration and geographic reach of the covenant at issue. Finally, National Instrument, LLC v. Braithwaite , 2006 WL 2405831, at *7 (Md. Cir. Ct. June 5, 2006) is a Circuit Court of Maryland, Baltimore City case, that similarly only considered geographic and temporal facial overbreadth arguments. Precision Walls, Inc. v. Servie , 152 N.C. App. 630, 568 S.E.2d 267 (2002) is a North Carolina case applying a different test.

See Seneca One Finance, Inc. , 214 F.Supp.3d at 462-63 ; Paul , 2017 WL 2462492, *6.

The defendants also contend that the contract is unenforceable because it contains an illusory geographic restriction. See, e.g. , Rodgers, P & A Mot. Dismiss at p. 13, ECF 13-1. The contract notes: "A general description of Employee's Sales Territory is set forth on Addendum A to this Agreement [Compl. Ex. 4], which Sales Territory shall be subject to amendment and revision by Employer, in its sole discretion, at any time and from time to time (as so amended and revised, the 'Sales Territory')." Compl. Ex. 4, ECF No. 1-4 at p. 17. While the Bindagraphics customer Mr. Rodgers is alleged to have contacted after his departure was located geographically within the sales territory, and indeed was listed by name on the original "Eric's territory" list, this is ostensibly a facial challenge to the contract's enforceability. A promise is illusory if "the promisor retains an unlimited right to decide later the nature or extent of his performance." Cheek v. United Healthcare of the Mid-Atlantic, Inc. , 378 Md. 139, 149, 835 A.2d 656 (2003) (citing 1 Samuel Williston, Contracts, § 4:24 (4th Ed. 1990)). "An unlimited right to determine how to perform, or whether to perform at all, negates the promise to perform." Questar Builders, Inc. v. CB Flooring, LLC , 410 Md. 241, 273, 978 A.2d 651 (2009). That said, courts generally "prefer a construction [of a contract] which will make the contract effective rather than one which will make it illusory or unenforceable." Kelley Constr. Co. v. Wash. Suburban Sanitary Comm'n , 247 Md. 241, 247, 230 A.2d 672 (1967). "If there is a restriction, express or implied, on the promisor's ability to terminate or to refuse to perform, the promise is not illusory. The tendency of the law is to avoid the finding that no contract arose due to an illusory promise when it appears that the parties intended a contract." 2 Corbin on Contracts § 5.28 (2018). And any "benefit to the promisor or ... detriment to the promisee is sufficient valuable consideration to support a contract." Vogelhut v. Kandel , 308 Md. 183, 191, 517 A.2d 1092 (1986). Critically here, "Maryland law generally implies a covenant to act in good faith and deal fairly with the other party or parties to a contract. This principle governs the manner in which a party may exercise the discretion accorded to it by the terms of the agreement. In performing, the party with discretion is limited to exercising that discretion in good faith and in accordance with fair dealing." Manning v. Mercatanti , 898 F.Supp.2d 850, 859 (D. Md. 2012) (emphasis supplied) (internal citations omitted). Unlike the arbitration-clause cases cited by Mr. Rodgers, a contract is not facially unenforceable merely because it delegates discretion to define one of its terms on an ongoing basis to a single party, where both parties otherwise incur binding obligations. Bindagraphics's ability to change the dimensions or businesses included in the sales territory is closer to an "open term" that has good reason to change over time, is premised upon a mutually enforceable agreement, and is limited by the implied covenant to act in good faith and fair dealing, than it is an illusory promise that "does not actually bind or obligate the promisor to do anything." Cheek , 378 Md. at 148, 835 A.2d 656.

To the extent that there is a separate confidentiality covenant in the employment contract in question, the court does not assess its enforceability because the plaintiff has failed to sufficiently allege a breach. See Section 6 of the employment contract set forth above. There are no facts pleaded pertaining to specific confidential information Mr. Rodgers is alleged to have used.